[Cite as *State v. Tucker*, 2016-Ohio-1033.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                        :

        Plaintiff-Appellee,               :               No. 15AP-434
                                               (C.P.C. No. 14CR-2415)
v.                                                   :               No. 15AP-435
                                               (C.P.C. No. 14CR-2947)

Eddie D. Tucker,                                     :

        Defendant-Appellant.             :               **(ACCELERATED CALENDAR)**

---

D E C I S I O N

Rendered on March 15, 2016

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Steven L. Taylor*, for appellee.

**On brief:** *W. Joseph Edwards*, for appellant. **Argued:** *W. Joseph Edwards*.

---

APPEALS from the Franklin County Court of Common Pleas

DORRIAN, P.J.

{¶ 1} Defendant-appellant, Eddie D. Tucker, appeals the March 25, 2015 judgments of the Franklin County Court of Common Pleas convicting him and imposing sentence following a jury trial. For the reasons that follow, we affirm the judgments of the trial court.

## I. Facts and Procedural History

{¶ 2} Deshawn Bass testified that on April 19, 2014 he met appellant, who is his cousin, at appellant's mother's house in Columbus, Ohio. While there, Bass and appellant engaged in a verbal altercation. Bass left the house and began walking toward the driveway. Appellant followed Bass and struck him a single time on the right side of his face, breaking his jaw. Bass's injury required surgery and his jaw was wired shut for six

weeks. Dominique Germany, Bass's girlfriend, testified that she followed appellant and Bass outside and witnessed appellant strike Bass.

{¶ 3} On April 20, 2014, approximately five hours after the incident occurred, Detective Kathy Zimmer of the Columbus Division of Police interviewed Bass and Germany at the hospital where Bass was being treated. Both Bass and Germany identified appellant as Bass's assailant. Detective Zimmer then interviewed appellant, who stated that he and Bass had been involved in a verbal altercation that escalated into a physical confrontation after they left the house.

{¶ 4} On or about May 2, 2014, Bass received several telephone calls from an unknown number. The caller threatened Bass if he testified against appellant in court. At the time, Bass believed that appellant was the person who threatened him. Germany was with Bass when he received some of the calls, and also believed that appellant was the caller at the time Bass received the calls. Bass reported the threats against him to Detective Zimmer. Based on the statements of Bass and Germany, Detective Zimmer filed a charge of intimidation against appellant. Bass stopped answering his phone and moved to a new apartment because of the threats.

{¶ 5} Detective Zimmer testified that she received a chip from Germany's phone containing a recorded conversation between appellant, Bass, and a third party identified as Trish. Detective Zimmer recognized appellant's voice on the call because of its distinctive raspy quality. Trish and appellant offered Bass a vehicle if he would go to appellant's attorney's office and sign a statement saying that appellant did not threaten him. In the recorded call, appellant stated that he did not know anything about the threats against Bass.

{¶ 6} On May 7, 2014, a Franklin County Grand Jury indicted appellant in Franklin C.P. No. 14CR-2415, charging him with one count of felonious assault, in violation of R.C. 2903.11, a felony of the second degree. The indictment also included a repeat violent offender specification. On June 4, 2014, a Franklin County Grand Jury indicted appellant in Franklin C.P. No. 14CR-2947, charging him with one count of intimidation of a crime victim or witness, in violation of R.C. 2921.04, a felony of the third degree.

{¶ 7}   Beginning January 29, 2015, the case was tried before a jury. On January 30, 2015, the jury returned a verdict of guilty as to the offenses of felonious assault and intimidation of a crime victim in a criminal case.  On March 25, 2015, the trial court held a sentencing hearing, imposing five years imprisonment for the offense of felonious assault that was to run concurrently with three years imprisonment for the offense of intimidation of a crime victim.  On the same day, the trial court filed judgment entries reflecting appellant's convictions and sentence.

## II. Assignment of Error

{¶ 8}   Appellant appeals assigning the following single error for our review:

THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE APPELLANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION.

## III. Discussion

{¶ 9}   In his assignment of error, appellant asserts that his convictions were not supported by sufficient evidence.

{¶ 10} Sufficiency of evidence is a "legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict."  *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 36, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  When judging the sufficiency of the evidence to support a criminal conviction, an appellate court must decide if, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.  Where the evidence, "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt," it is sufficient to sustain a conviction. *Id.*

{¶ 11} "While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief."  *Cassell* at ¶ 38, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25. *See also Thompkins* at 387 ("Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude

that the judgment is against the weight of the evidence.").  An appellate court must review the entire record, weighing the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).  This authority " 'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *Martin* at 175.

{¶ 12} "[A] defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial."  *State v. Spires*, 10th Dist. No. 10AP-861, 2011-Ohio-3312, ¶ 18, citing *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21.  The trier of fact is free to believe or disbelieve any or all of the testimony.  *Id.*, citing *State v. Jackson*, 10th Dist. No. 01AP-973, 2002-Ohio-1257.  Thus, although an appellate court acts as a "thirteenth juror" in considering the weight of the evidence, it must give great deference to the fact finder's determination of witness credibility.  *Id.*, citing *State v. Covington*, 10th Dist. No. 02AP-245, 2002-Ohio-7037, ¶ 22.

{¶ 13} "The identity of a perpetrator may be established by the use of direct or circumstantial evidence."  *State v. Mickens*, 10th Dist. No. 08AP-626, 2009-Ohio-1973, ¶ 18, citing *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, and *State v. Reed*, 10th Dist. No. 08AP-20, 2008-Ohio-6082.  "A witness need not be free from doubt when identifying the perpetrator of a crime."  *State v. Cameron*, 10th Dist. No. 10AP-240, 2010-Ohio-6042, ¶ 31, citing *State v. Canady*, 10th Dist. No. 89AP-715 (Feb. 5, 1991).  "While identity is an element that must be proven by the state beyond a reasonable doubt, the credibility of witnesses and their degree of certainty in identification are matters affecting the weight of the evidence."  *Reed* at ¶ 48.  *See also Mickens* at ¶ 18; *Cameron* at ¶ 31. " 'Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.' "  *Mickens* at ¶ 18, quoting *State v. Coleman*, 10th Dist. No. 99AP-1387 (Nov. 21, 2000), citing *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977).

{¶ 14} Here, appellant's arguments address the witnesses' degree of certainty or credibility in their identification of appellant as the perpetrator of the crimes. Thus, although appellant frames his assignment of error in terms of the sufficiency of the evidence, appellant's contentions actually address the manifest weight of the evidence. *Reed* at ¶ 48. *See State v. Williams*, 10th Dist. No. 14AP-546, 2015-Ohio-1136, ¶ 27, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80 (noting that when examining the sufficiency of the evidence, appellate courts "do not assess whether the prosecution's evidence is to be believed, but whether, if believed, the evidence supports the conviction"). Therefore, we review appellant's contentions under the manifest weight of the evidence standard of review.

{¶ 15} First, appellant contends that Bass and Germany did not conclusively identify him as the person who threatened Bass. At the time of the trial, Bass testified that he was uncertain of the identity of the caller. Specifically, Bass stated that "I don't really think it was [appellant's] voice, but I think it was somebody. I don't know who it was." (Tr. Vol. I, 47.) However, Bass also testified that he was "70 percent" certain that it was appellant who called him. (Tr. Vol. I, 47.) Furthermore, at the time of the incident, Bass believed that appellant called him. When he reported the incident to Detective Zimmer, Bass stated that "I am not 100-percent sure, but I feel in my heart it's [appellant]." (Tr. Vol. I, 59.)

{¶ 16} Germany, who was with Bass when he received the calls, also believed that appellant was the caller at the time of the incidents. Germany stated that "everybody's voice has a certain distinctive tone or rasp" and she thought the caller was appellant because his voice "had a rasp to it." (Tr. Vol. II, 133.) However, at trial, Germany stated that she was not "100-percent sure" that appellant was the caller. (Tr. Vol. II, 133.) Appellant's counsel had the opportunity to cross-examine Bass and Germany about their identification of appellant. As a result, the jury was aware of the witnesses' degree of certainty in their identifications and could consider that in weighing the credibility of the testimony. *See State v. Ferguson*, 10th Dist. No. 07AP-640, 2008-Ohio-3827, ¶ 61. Although Bass and Germany were not free from doubt in their identification of appellant as the person who made threatening calls, the jury was free to consider this information in

determining the weight to accord the witnesses' testimony. *Cameron* at ¶ 31; *Mickens* at ¶ 18.

{¶ 17} Furthermore, although Detective Zimmer did not hear appellant threaten Bass, she stated that appellant had a "distinct raspy voice," thereby supporting Germany's identification. (Tr. Vol. II, 175.) Detective Zimmer also listened to a recording in which appellant offered Bass a vehicle. In exchange, appellant asked Bass to go to appellant's attorney's office and sign a statement denying appellant's involvement in the threatening calls. The jury was free to consider appellant's attempt to bribe Bass as it was relevant evidence demonstrating "consciousness of * * * guilt, similar to evidence of flight to avoid prosecution, or efforts made to cover up a crime or intimidate witnesses." *State v. Richey*, 64 Ohio St.3d 353, 357 (1992). *See also State v. Caulley*, 10th Dist. No. 97AP-1590, 2002-Ohio-1078.

{¶ 18} Considering the totality of the evidence, including all reasonable inferences and weighing the credibility of the witnesses, we conclude that it was reasonable for the jury to find that appellant was the caller responsible for intimidating Bass. *See Reed* at ¶ 49; *Cameron* at ¶ 31 (finding that witness's "identification is not rendered inadmissible due to any doubts he may have expressed about it"); *State v. Wilcox*, 10th Dist. No. 05AP-972, 2006-Ohio-6777, ¶ 39 (finding that it was reasonable for jury to find that the defendant was the assailant where the witnesses' "identifications varied in certainty, and their testimonies regarding what defendant was wearing and/or carrying were not entirely consistent"); *State v. Brown*, 10th Dist. No. 07AP-244, 2007-Ohio-6542, ¶ 21 (finding that witness's conflicting testimony regarding the identity of her assailant was an issue of weight and credibility for the jury and did not render the appellant's conviction against the manifest weight of the evidence). Therefore, we cannot find that the jury clearly lost its way and created a manifest miscarriage of justice such that appellant's conviction for intimidation must be reversed.

{¶ 19} Next, appellant contends that Bass's identification of appellant as his assailant was not credible because medical records taken following the assault allegedly reflected that Bass was "assaulted by unknown assailants" and did not mention that he was struck by a cousin or family member. (Appellant's Brief, 10.) Appellant's counsel asked Bass whether he told hospital personnel that he was "jumped by unknown

assailants from behind."   (Tr. Vol. I, 68.)   Bass repeatedly denied making any such statement.

{¶ 20} To the contrary, Bass repeatedly stated at trial that he was struck by appellant. When asked whether he could "have been hit by someone else," Bass stated "No." (Tr. Vol. I, 34.)  Even if we found there was inconsistent evidence presented at trial regarding whether appellant struck Bass, such inconsistency alone does not entitle appellant to a reversal of his conviction on manifest weight grounds.  *Spires* at ¶ 18; *State v. Ramey*, 10th Dist. No. 11AP-485, 2012-Ohio-1015, ¶ 9, citing *Raver* at ¶ 21.  The jury was in the best position to weigh evidence relating to Bass's medical records in making its determination, and such determination is entitled to great deference from a reviewing court.  *State v. Taylor*, 10th Dist. No. 14AP-254, 2015-Ohio-2490, ¶ 37.

{¶ 21} Additionally, other testimony supported the identification of appellant as Bass's assailant.  Germany testified that she witnessed appellant strike Bass.  When asked whether she was "100-percent sure" that appellant was the one who struck Bass, Germany responded that she was "1000-percent sure."  (Tr. Vol. II, 138.)  Thus, the jury was free to believe the testimony of Germany regarding the identity of Bass's assailant.  *See Williams* at ¶ 27, quoting *State v. Strong*, 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 42 (" '[T]he testimony of one witness, if believed by the jury, is enough to support a conviction.' ").  Furthermore, appellant admitted to Detective Zimmer that he and Bass were involved in a physical confrontation, although he did not admit to striking Bass.  According to Detective Zimmer, appellant stated that Bass pushed him, he pushed Bass back, and then "there was a whole lot of altercation."  (Tr. Vol. II, 169-70.)

{¶ 22} Therefore, considering the entire record and the credibility of the witnesses, we cannot find that appellant's conviction for felonious assault was against the manifest weight of the evidence.  Accordingly, we overrule appellant's assignment of error.

**IV. Disposition**

{¶ 23} Having overruled appellant's sole assignment of error, we affirm the judgments of the Franklin County Court of Common Pleas.

*Judgments affirmed.*

BROWN, J., concurs.
LUPER SCHUSTER, J., concurs in judgment only.

_____