[Cite as *State v. Guy*, 2018-Ohio-4835.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                     :

    Plaintiff-Appellee,                        :

                                     No. 17AP-281

v.                                                :        (C.P.C. No. 16CR-771)

Isaiah Guy,                                       :        (REGULAR CALENDAR)

    Defendant-Appellant.                       :

D E C I S I O N

Rendered on December 6, 2018

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Sheryl L. Prichard*, for appellee. **Argued:** *Sheryl L. Prichard*.

**On brief:** *Todd W. Barstow*, for appellant. **Argued:** *Todd W. Barstow*.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, Isaiah Guy ("Isaiah"), appeals from a judgment of the Franklin County Court of Common Pleas sentencing him to a total of seven years imprisonment pursuant to jury verdicts finding him guilty of three counts of heroin trafficking, one count of heroin possession, and one count of kidnapping. Because we conclude the convictions were supported by sufficient evidence and were not against the manifest weight of the evidence, we affirm.

**I. Facts and Procedural History**

{¶ 2} Isaiah, his brother James Guy ("James"), and Andrew Naus ("Naus") were indicted in February 2016 on various drug possession, drug trafficking, and kidnapping charges related to events that occurred in October 2014. The charges against Isaiah and James were tried together in a jury trial conducted in late February and early March 2017.

{¶ 3}    An undercover detective from the Special Investigations Unit of the Franklin County Sheriff's Office ("the detective") testified at trial he received information from a confidential informant about narcotics activity at an address on West Broad Street in Columbus, Ohio.  Although the detective did not find evidence of narcotics activity at that location, the investigation led him to investigate narcotics activity at 72 South Wheatland Avenue ("South Wheatland") in Columbus, Ohio.  Naus was later identified as having rented the house at 72 South Wheatland.  The informant arranged for the detective to purchase heroin from an individual identified as "Zay."  On October 15, 2014, the detective and the informant went to 72 South Wheatland and the detective purchased one gram of heroin from "Zay."  During the transaction, "Zay" questioned the detective about his car and suggested the detective could be a police officer.  The detective lifted his shirt to indicate he was not wearing any recording devices.  Following the purchase, the detective researched the information he knew about "Zay," including the initial address provided by the informant, and identified Isaiah as "Zay."  At trial, the detective identified Isaiah in the courtroom as the individual referred to as "Zay," who sold heroin to him.

{¶ 4}    On October 16, 2014, the detective called Isaiah to arrange a second purchase of heroin.  The detective returned to 72 South Wheatland with another undercover detective and purchased two grams of heroin from Isaiah.  The detective entered the house alone, while the other detective waited in the car.  The detective was not wearing a recording device but had a cell phone in his pocket that was connected to an open line being monitored by a surveillance team.  In addition to Isaiah, another individual was present at the house and Isaiah introduced him to the detective as his "brother Stone." (Tr. Vol. II at 344.)  Following the transaction, the detective conducted research and retrieved photographs; this research led him to identify James as the individual who was introduced to him as "brother Stone." The detective testified that surveillance of the residence identified a partial Illinois license plate number on one of the vehicles parked outside the residence.  The detective determined the number was a partial match to a license plate number registered to James.  At trial, the detective identified James in the courtroom as the individual who was introduced as "brother Stone."

{¶ 5}    During the transaction on October 16, 2014, James questioned the detective about his car and whether he intended to use or sell the heroin.  James then said something

about the detective being a police officer and asked whether he was wearing a recording device.  When James attempted to pat him down, the detective pushed James away and refused to be searched.  James then told the detective to wait and turned toward a curtain leading into the next room.  The detective turned toward the exit door, which had been resting against the door jamb but not fully closed.  Isaiah stepped between the detective and the door, and closed the door.  The detective turned back toward the interior of the room and found James holding a black pistol in his face.  At trial, the detective identified the gun James pointed at him on October 16th as appearing similar to a Springfield .40 caliber pistol that was recovered from the house in a search conducted on October 17th.  James told the detective to step away from the door and the detective complied.  James instructed the detective to remove his clothes.  The detective refused to undress, but removed his coat and James instructed Isaiah to pat him down.  During the search, the detective admitted he had a firearm, which Isaiah removed from his pocket and placed in the corner of the room.  The detective claimed he had the gun to avoid being robbed. James then put his gun in his waistband and continued the transaction.  After completing the purchase, the detective asked for his gun back.  James pulled out his own gun and pointed it at the detective while telling him to go get the gun but keep it pointed down.  The detective then retrieved his gun and left the residence.  The detective testified that the lighting inside 72 South Wheatland was minimal, but adequate, and that he was approximately three to eight feet away from Isaiah and James during the transaction.

{¶ 6}  On October 17, 2014, the detective and other members of the Special Investigations Unit executed a search warrant on 72 South Wheatland following initial entry by a Special Weapons and Tactics ("SWAT") team.  Both Isaiah and James were present at the time the search warrant was executed and were both arrested.  During the search, Isaiah's state identification card was located in a dresser drawer in a bedroom of 72 South Wheatland, along with two firearms, two bottles containing drugs, and an unspecified quantity of cash.

{¶ 7}  At trial, plaintiff-appellee, State of Ohio, presented recordings of telephone calls made by Isaiah while in the Franklin County Jail.  In one of the calls, Isaiah identified himself as "Zay" during the recorded introduction of the call before then identifying himself as "Isaiah."  Isaiah asked the recipient of the call how he was identified at the beginning of

the call. When the call recipient responded "Zay, Isaiah," Isaiah indicated he made a mistake by referring to himself as "Zay" and tried to correct it. In another call, placed by Isaiah to James on October 23, 2014 after James had been released from the Franklin County Jail, James indicated he had posted on Facebook about the incident. The detective testified that based on this call and using a telephone number he had for Isaiah, he identified a Facebook page belonging to Isaiah under the name "Zay Block." This page contained 6 to 12 photographs of Isaiah. The detective testified the "Zay Block" page was also linked to a Facebook page for James under the name "Wes Worlds." The detective testified that this Facebook page contained dozens of photographs of James. On the "Wes Worlds" Facebook page there were posts on October 23, 2014 asserting that SWAT officers had killed the page owner's dog during a raid, and warning that undercover and SWAT officers were actively pursuing drug dealers. On cross-examination, the detective admitted that jail inmates sometimes switch personal identification numbers for use in making phone calls. The pre-recorded message containing the caller's name is associated with the personal identification number; therefore, this information would not change if one inmate used another inmate's personal identification number to make a call.

{¶ 8} On cross-examination, the detective admitted that none of the items retrieved from 72 South Wheatland pursuant to the search warrant were submitted for fingerprint or DNA testing. The detective also admitted there were no surveillance photographs of Isaiah at that location on October 15th or 16th. The detective admitted on cross-examination he did not see Isaiah possess a firearm during either transaction, except when he removed the detective's own firearm from his pocket and placed it in the corner.

{¶ 9} Isaiah and James's mother, Patricia Guy ("Patricia"), was called as a witness and testified she did not recall seeing Isaiah on October 15, 2014, but saw him during the afternoon of October 16, 2014 at a casual family gathering at her daughter's house on Livingston Avenue. Patricia testified Isaiah was living at that address at the time. Patricia testified she was at the gathering for a few hours, but did not know if Isaiah was present that entire time.

{¶ 10} Stella Calloway ("Calloway"), who was in a relationship with Isaiah, was also called as a witness and testified she was with Isaiah during the day on October 15, 2014, and spent that evening with him at the Livingston Avenue address. She testified she did

not specifically recall going with Isaiah to 72 South Wheatland on October 15th, but admitted it could have happened. Calloway further testified she was apart from Isaiah for a few hours in the early morning of October 16, 2014, and then picked him up and accompanied him to two locations for meetings about parts for a tow truck. She then accompanied Isaiah at the gathering at the Livingston Avenue address and stayed with him that evening, leaving early on the morning of October 17, 2014.

{¶ 11} James's fiancée, Debra Smith ("Smith"), testified that James and his five brothers have a similar physical appearance. Smith testified that she spent part of October 16th with James at his mother's house and another part of the day and evening with James and members of his family at his sister's house. On cross-examination, Smith testified she and James drove around in a maroon or purplish Envoy on October 16, 2014. The Special Investigations Unit surveillance log for October 16, 2014 indicated a maroon Envoy was one of the vehicles present behind 72 South Wheatland on that date. Smith also admitted on cross-examination that she did not contact police to state that James was with her on October 16th prior to trial, but also testified that she was not contacted by law enforcement about the events of October 16th or 17th. She also testified she did not believe she needed to come forward because she and James believed there was a police recording of the events on October 16th that would exonerate James.

{¶ 12} James and Isaiah's brother, Daniel Guy ("Daniel"), testified he has frequently been mistaken for his brothers, including one time when he was subjected to a traffic stop while driving a white truck registered to James, and searched because police officers believed one of his brothers was in the vehicle. Daniel testified that he and Naus performed improvements on the house at 72 South Wheatland, getting it ready for Naus to occupy it. Daniel testified there were "[a] lot of people" in the house at 72 South Wheatland throughout the day. (Tr. Vol. VII at 1431.)

{¶ 13} At the close of the jury trial, Isaiah was convicted on three counts of heroin trafficking, one count of heroin possession, and one count of kidnapping. The trial court found that the heroin trafficking and possession charges related to October 17, 2014 merged for purposes of sentencing, and sentenced Isaiah to a total of seven years imprisonment on all charges.

## II. Assignment of error

{¶ 14} Isaiah appeals and assigns the following single assignment of error for our review:

> THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING HIM GUILTY OF TRAFFICKING IN HEROIN; KIDNAPPING AND POSSESSION OF HEROIN AS THOSE VERDICTS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## III. Analysis

{¶ 15} In his sole assignment of error, Isaiah argues his convictions for heroin trafficking and possession, and for kidnapping, were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶ 16} "Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 36, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Where the evidence, "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt," it is sufficient to sustain a conviction. *Id.* "The testimony of a single witness, if believed by the finder of fact, is sufficient to support a criminal conviction." *State v. Booker*, 10th Dist. No. 15AP-42, 2015-Ohio-5118, ¶ 18. *See also State v. Conkel*, 10th Dist. No. 08AP-845, 2009-Ohio-2852, ¶ 14, citing *State v. Ruhlman*, 12th Dist. No. CA2005-05-125, 2006-Ohio-2137, ¶ 26 (for the proposition that the testimony of a victim as to the elements of sexual assault, if believed, is sufficient to establish the elements of the offense).

{¶ 17} "While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest

weight of the evidence standard addresses the evidence's effect of inducing belief." *Cassell* at ¶ 38, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25.

> When presented with a challenge to the manifest weight of the evidence, an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. McCrary*, 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 12, citing *Thompkins* at 387. This authority " 'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). In conducting our review of the evidence, "we are guided by the presumption that the jury, or the trial court in a bench trial, 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 18} Isaiah was convicted of three counts of trafficking in heroin, in violation of R.C. 2925.03, with one count related to the sale of heroin to the detective on October 15th, the second count related to the sale of heroin to the detective on October 16th, and the third count related to the evidence obtained pursuant to the search warrant that was executed on October 17th. Isaiah was also convicted of one count of possession of heroin, in violation of R.C. 2925.11, related to the evidence obtained pursuant to the search warrant that was executed on October 17th. He was also convicted of one count of kidnapping, relating to the incident where the detective was held at gunpoint on October 16th. On appeal, Isaiah does not challenge any of the statutory elements of the charges, such as the amount of heroin involved in each transaction or the purpose of the restraint of the detective giving rise to the kidnapping charge. Instead, he argues the state failed to establish that he was the individual identified as "Zay" who committed the offenses. Based on our review of the record, we conclude that, viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to establish each of the statutory elements of the

charges against Isaiah.  We also conclude that with respect to the statutory elements of the charges against Isaiah, the jury did not clearly lose its way in finding those elements to have been proven.  Therefore, we will focus our analysis on the issue of identity.

{¶ 19} Isaiah notes that Patricia and Calloway testified they were with him on October 16, 2014 at a family gathering at his sister's home on Livingston Avenue.  Isaiah argues the sheriff's department did not maintain consistent surveillance on 72 South Wheatland between October 16th and 17th, and there was no specific testimony regarding where Isaiah was located when the search warrant was executed on October 17th.  Isaiah further notes Patricia testified she saw him in a car outside the residence after the raid, suggesting he was not in the residence at the time the search warrant was executed.

{¶ 20} " 'While identity is an element that must be proven by the state beyond a reasonable doubt, the credibility of witnesses and their degree of certainty in identification are matters affecting the weight of the evidence.' "  *State v. Tucker*, 10th Dist. No. 15AP-434, 2016-Ohio-1033, ¶ 13, quoting *State v. Reed*, 10th Dist. No. 08AP-20, 2008-Ohio-6082, ¶ 48.

{¶ 21} The detective identified Isaiah in the courtroom as the individual known as "Zay" who sold him heroin on October 15th and 16th.  He testified the lighting in the kitchen where the transactions occurred was low, but adequate for him to see Isaiah.  The detective further testified that after the initial transaction on October 15th, he conducted research and identified Isaiah as the individual who had been introduced to him as "Zay," including identifying the "Zay Block" Facebook page containing multiple photographs of Isaiah.  The detective also testified that Isaiah was present on October 17th when the search warrant was executed. As explained above, this testimony alone, if believed by the jury, would have been sufficient to establish the element of identity.  *Booker* at ¶ 18.  However, the prosecution did not rely solely on the detective's testimony to establish that Isaiah was the individual identified as "Zay" who participated in the heroin transactions at 72 South Wheatland.  The prosecution presented evidence that Isaiah's state identification card was found in a dresser drawer in a bedroom of 72 South Wheatland, along with cash, drugs, and firearms.  The prosecution also introduced the jail call recording in which Isaiah referred to himself as "Zay" and then told the call recipient he had made a mistake by doing so.  During that same call, Isaiah instructed the call recipient to find his Galaxy 4 cell phone and

switch the number. The detective testified a Samsung Galaxy 4 cell phone was recovered from 72 South Wheatland pursuant to the search warrant and the number associated with that phone matched the phone number he had used to contact the individual identified as "Zay" regarding the purchase of heroin.

{¶ 22} Isaiah relies on the alibi testimony offered by Patricia and Calloway. However, that testimony failed to account for Isaiah's whereabouts on October 15th or 17th. Patricia testified that she had no recollection of seeing Isaiah on the 15th, and although Calloway testified she was with Isaiah on the 15th, she admitted it was possible they went to 72 South Wheatland on that date. Neither Patricia nor Calloway testified they were with Isaiah on October 17th, when the search warrant was executed, although Patricia testified she saw Isaiah in a police car outside that address after the warrant had been served. Both Patricia and Calloway testified they were with Isaiah at the family gathering at the house on Livingston Avenue on October 16th, but Patricia did not know whether Isaiah was present during the entire gathering and Calloway testified that she accompanied Isaiah to multiple locations on October 16th to try to get parts for a tow truck. Neither witness's testimony conclusively established that Isaiah was not at 72 South Wheatland at some time on October 16th. Moreover, both Patricia and Calloway had personal relationships with Isaiah, and the jury was able to consider that in weighing their credibility. *See State v. Powell*, 10th Dist. No. 17AP-808, 2018-Ohio-3944, ¶ 15 ("As the finder of fact, the jury is in the best position to weigh the credibility of testimony by assessing the demeanor of witnesses and the manner in which they testify, their connection or relationship with the parties, and their interest, if any, in the outcome.").

{¶ 23} The testimony and evidence in this case, if viewed in the light most favorable to the prosecution, was sufficient to establish that Isaiah was the individual identified as "Zay" who engaged in the heroin transactions with the detective at 72 South Wheatland. Furthermore, with respect to the weight of the evidence, while there was some testimony from Patricia and Calloway suggesting that Isaiah was not at 72 South Wheatland on October 16th, that testimony must be balanced against the detective's testimony regarding the events of that day and the day prior, along with the other evidence indicating Isaiah had been present at that location. Based on our review of the evidence, and all reasonable inferences, and considering the credibility of the witnesses, we cannot find the jury clearly

lost its way and created such a manifest miscarriage of justice that the convictions must be reversed.

{¶ 24} Accordingly, we overrule Isaiah's sole assignment of error.

**IV. Conclusion**

{¶ 25} For the foregoing reasons, we overrule Isaiah's sole assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN, P.J., and SADLER, J., concur.