[Cite as *State v. Newman*, 2020-Ohio-5087.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 109182 |
| v. | : | |
| DAZELLE NEWMAN, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 29, 2020

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-620465-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, Hannah M. Smith, and Tasha L. Forchione, Assistant County Prosecuting Attorneys, *for appellee*.

Brian R. McGraw, *for appellant*.

LARRY A. JONES, SR., J.:

{¶ 1} Defendant-appellant Dazelle Newman ("Newman") challenges his convictions for numerous crimes that were rendered after a bench trial in which Newman proceeded pro se. For the reasons that follow, we affirm.

## Procedural History

{¶ 2} The state alleged that Newman engaged in a criminal spree in October 2016. It initially indicted him under two separate cases — Cuyahoga C.P. Nos. CR-16-611089-C and CR-16-611957-A — that reflected the investigations by two districts of the Cleveland Police Department (i.e., the Third and Fifth Districts). The state contends that it discovered that the above-mentioned indictments inadvertently did not contain the entirety of Newman's crimes, however. Thus, the state filed a new indictment, the indictment at issue here (Case No. CR-17-620465-A). Yet still, the new indictment omitted some crimes relative to one of the victims set forth in Case No. 611957-A, and the state moved to consolidate those counts from Case No. CR- 611957-A with this case (Case No. CR-620465-A); the trial court granted the state's motion. The final indictment against Newman consisted of 42 counts. Newman was appointed counsel.

{¶ 3} In the days leading up to the trial date, Newman stated that he wanted to try the matter to the bench and he wanted to represent himself. Newman's counsel advised him against both decisions. Counsel informed the court that in a prior, recent case,[1] Newman had been referred to the court psychiatric clinic for a competency evaluation. The evaluation found that Newman had significant mental health diagnoses, but that he was nonetheless competent to stand trial. The report found that there was an issue as to whether Newman was competent to represent himself, however, and based on that issue, counsel and the

---

[1] *State v. Newman*, Cuyahoga C.P. No. CR-16611461-A.

assistant prosecuting attorney in this case suggested that a new referral and report were in order. The trial court agreed and referred Newman to the psychiatric clinic for an evaluation on his competency to proceed pro se.

{¶ 4} The record reflects that Newman was not cooperative with the clinic, however. The trial court placed the following on the record: "I received the information back from the Court Psychiatric Clinic that you were malingering and did not cooperate with them. As a result, we could not complete that evaluation for your purposes to protect your interests." The court granted his request to proceed pro se, reasoning as follows: "There is a different evaluation for purposes of waiving counsel. You decided to not take advantage of it. That's been resolved. I'm going to allow you to waive counsel." Newman also waived his right to a jury trial.

{¶ 5} Thus, a bench trial proceeded, with Newman representing himself. The court heard the evidence and dismissed a number of the counts (Counts 1-5, 20, 22, 27, 29, and 37-42); found him not guilty of two counts (Counts 12 and 28); and found him guilty of the remaining counts (Counts 6-11, 13-19, 21, 23-26, and 30-36). The trial court sentenced Newman to an aggregate sentence of 42 years, which included consecutive terms. The sentence was also ordered to be served consecutively to a 25-year sentence in another case for which Newman was incarcerated (Case No. CR-611461-A).

## Statement of Facts

{¶ 6} As mentioned, the crimes occurred in October 2016. The first set of crimes on which Newman was convicted occurred on October 24, 2016. At approximately 4:00 in the morning, Newman led the police on a high-speed chase, during which he rammed a police cruiser. Newman was able to evade the police.

{¶ 7} Later, at approximately 11:30 in the evening, Newman arrived at 1561 Addison Road in Cleveland, where Deante Benjamin ("Benjamin") resided. Multiple people, including children, were inside Benjamin's home at the time. Newman, carrying a shotgun-style firearm, forced himself into Benjamin's home, looking for Benjamin. While looking for Benjamin, Newman pointed the weapon at several people, including children. After not finding Benjamin, Newman left the house and discharged two shots through Benjamin's car.

{¶ 8} Newman began driving away from Benjamin's house. At the same time, Jamesiea Brown ("Brown") was walking into her home at 1152 Addison Road. Newman crashed the vehicle he was driving in Brown's front yard, got out, and, at gunpoint, forced himself and Brown into Brown's home. Newman robbed Brown of the keys to her car and then drove away in her car.

{¶ 9} The next morning, October 25, 2016, Lawrence Taylor ("Taylor") was riding his bicycle on West 25th Street in Cleveland. Taylor was hit by Newman, who was driving the car he had stolen from Brown. Taylor testified that Newman saw him and intentionally "ran over" him. While Taylor was on the ground, Newman got of the car and beat and robbed Taylor. Taylor was able to get

on his feet, and when he did so, Newman got back in the car. Taylor started walking, and when he did, Newman accelerated the car, struck Taylor a second time, and dragged him on the hood of the car. Taylor was eventually thrown off the car, and Newman fled the scene. The incident was captured on a gas station surveillance camera.

{¶ 10} Later, at approximately 2:45 a.m., Newman went back to Benjamin's house at 1561 Addison Road. The police engaged in a second pursuit with him at that time, during which he again rammed a police cruiser. The police were still able to give chase, however. Newman drove the car into an open field, fled from the car, and evaded the police. Two other people were with him and were arrested on the scene: codefendants Victoria Bascom ("Bascom") and Nicholas Rusnak ("Rusnak"). Newman was found and arrested on November 2, 2016.

{¶ 11} Victim Brown was shown a photo array of possible suspects. She picked Newman and told the police that it was 75% likely that he was her assailant. At trial, Brown was unable to identify Newman as her assailant. Jerome Curry, who is Brown's brother and lived at the same address at the relevant time, witnessed at least part of the incident and testified to a similar scenario as Brown did. He was shown a photo array the day after the incident and identified Newman as the assailant with 50% certainty. At trial, he testified that he was confident Newman was the assailant, however. Another witness from Brown's house was not able to make an identification of the assailant.

{¶ 12} Victim Benjamin was called; the state was permitted to treat him as a hostile witness. He did not provide any meaningful testimony about the incident. However, the police testified that upon going to his house in response to a 911 call that a vehicle was shot, Benjamin provided Newman's name as a possible suspect. The interaction was recorded on the detective's body camera.

{¶ 13} The two codefendants, Rusnak and Bascom, who were with Newman at the time of the second chase, also testified. Rusnak did not provide any meaningful testimony, except to admit that he, Bascom, and Newman were together at the time in question. Bascom initially testified that Newman was not in the car, but later admitted, after being declared a hostile witness, that Newman was in the car and was involved in the pertinent events.

## Assignments of Error

I.    The trial court committed error when it abused it's [sic] discretion by permitting a likely incompetent person to be a pro se litigant.

II.   Newman's convictions are against the manifest weight of the evidence.

## Law and Analysis

{¶ 14} In his first assignment of error, Newman contends that the trial court erred and abused its discretion by allowing him to waive his right to counsel.

{¶ 15} The record shows that, prior to trial, Newman demanded that the trial court allow him to represent himself, stating that it was his constitutional right to do so. Newman's appointed attorney advised him against proceeding pro se, and the trial court informed Newman of the complexity of the case, the dangers

of self-representation, and also advised him not to represent himself. Newman persisted with his request that he be allowed to proceed pro se, however.

{¶ 16} Thus, the trial court, on the defense and state's urging, referred Newman to the court's psychiatric clinic for evaluation as to his competency to proceed pro se. The record reflects that Newman had a history of not cooperating with the examiners, and this time proved no different; he refused to cooperate and, therefore, the clinic could not complete its evaluation of him. Thus, the trial court considered Newman's multiple requests to represent himself, numerous "coherent" motions he had filed himself, his refusal to participate in the evaluation, and granted his request to represent himself.

{¶ 17} The right to counsel for the criminally accused is enshrined in both the Sixth Amendment to the United States Constitution and the Ohio Constitution. Sixth Amendment to the United States Constitution; Article I, Section 10, Ohio Constitution. Nevertheless, a defendant may waive his or her right to counsel and proceed pro se so long as that waiver is made voluntarily, knowingly, and intelligently. *State v. Nelson*, 2016-Ohio-8064, 75 N.E.3d 785, ¶ 18 (1st Dist.). For such a waiver to be valid though, the record must demonstrate that the trial court made a sufficient inquiry to determine that the defendant "fully understood and intelligently relinquished his or her right to counsel." *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 39. Crim.R. 44(C) further provides that "[w]aiver of counsel shall be in open court and the advice and waiver shall be recorded * * *. In addition, in serious offense cases the waiver shall be in writing."

We review the propriety of a defendant's waiver of his or her right to counsel de novo. *Nelson* at ¶ 17.

{¶ 18} "The competency that is required of a defendant seeking to waive his [or her] right to counsel is the competence to waive the right, not the competence to represent himself [or herself]." *Godinez v. Moran*, 509 U.S. 389, 399, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993); *see also State v. Watson*, 132 Ohio App.3d 57, 724 N.E.2d 469 (8th Dist.1998). The defendant must have the "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and ha[ve] a 'rational as well as factual understanding of the proceedings against him [or her].'" *Godinez* at 396, quoting *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). This is the same standard for determining one's competency to stand trial. *Godinez* at *id.*

{¶ 19} Trial courts have discretion, however, to inquire beyond a defendant's competency to stand trial in determining whether he or she is competent to proceed pro se. *Indiana v. Edwards*, 554 U.S. 164, 178, 128 S.Ct. 2397, 171 L.Ed.2d 345 (2008). The *Edwards* court held that "the Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his [or her] own defense at trial is mentally competent to do so." *Id.*

{¶ 20} The trial court attempted to have Newman submit to an evaluation for the purpose of determining whether he was competent to waive his right to counsel. Newman failed to cooperate with the evaluators, however. Thus, the trial

court was forced to rely on a February 2017 report from another case, Case No. CR-611461. That report noted Newman's "uncooperative" behavior, but nonetheless found Newman competent to stand trial. The report referenced a 2005 report that also found Newman competent to stand trial. Moreover, the report found that Newman had been "exaggerating his symptoms and incompetence to stand trial" and had been "deliberately uncooperative."

{¶ 21} In addition to relying on the former report, the trial court questioned Newman about his competency, specifically asking Newman if he understood the minimum and maximum exposure he faced if found guilty. Newman responded that he understood, and that it was still his desire to waive his right to counsel and proceed pro se.

{¶ 22} On the record before us, we find that, as set forth under *Godinez* and *Watson*, the trial court met the competency standard. Newman was competent to stand trial and, further, he had a rational understanding of the proceedings against him. Moreover, Newman had (1) filed numerous motions pro se, that were coherent and contained pertinent law and procedure; (2) had presented an argument in court regarding him proceeding pro se, and (3) cited constitutional provisions and case law in support of his argument.

{¶ 23} We also find no error in the trial court's finding that Newman's waiver of counsel was knowing and voluntary. After Newman refused to cooperate with the court's psychiatric clinic, the trial court independently advised Newman of the nature of the charges and the range of allowable punishment if convicted. The

court specifically asked Newman if his waiver was knowingly and voluntarily made, and Newman responded that it was.

{¶ 24} Newman contends that his performance during trial demonstrates that he was unable to represent himself. However, an accused's technical legal knowledge is irrelevant to an assessment of his or her knowing exercise to defend himself or herself. *Faretta v. California*, 422 U.S. 806, 836, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The *Faretta* court assumed that most lay people who defend themselves in a criminal action will fare worse than those represented by skilled counsel. Nonetheless, the court recognized that just as it is the accused's right to plead guilty or no contest to the charges against him or her, it is equally an accused's personal constitutional right to face the charges alone, either by standing mute and forcing the state to its burdens of proof or by attempting to defend himself or herself.

{¶ 25} In light of the above, we find no merit to Newman's first assignment of error and overrule it.

{¶ 26} In his second assignment of error, Newman contends that his convictions were against the manifest weight of the evidence.

{¶ 27} When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the factfinder's verdict to permit reasonable minds to find guilt beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997) (noting that "[w]hen a court of appeals reverses a judgment

of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony"). Determinations of credibility and weight of the testimony remain within the province of the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Thus, the factfinder may take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part or none of a witness's testimony." *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). Reversals of convictions as being against the manifest weight of the evidence are reserved for exceptional cases where the evidence weighs heavily in favor of the defendant. *State v. Otten*, 33 Ohio App.3d 339, 340, 515 N.E.2d 1009 (9th Dist.1986).

{¶ 28} Upon review, we find no merit to Newman's manifest-weight-of-the-evidence challenge to his convictions. Victim Brown, the car theft victim, identified that it was her car that was stolen and the gun found inside the car was the same gun used in the crime. Further, Brown identified Newman from a photo lineup. It is true that she told the police that it was 75% likely that Newman was her assailant, and that at trial, she was unable to identify Newman as her assailant, but that does not automatically discredit her identification testimony. "'A witness need not be free from doubt when identifying the perpetrator of a crime.'" *State v. Tucker*, 10th Dist. Franklin No. 15AP-434, 2016-Ohio-1033, ¶ 13, quoting *State v. Cameron*, 10th Dist. Franklin No. 10AP-240, 2010-Ohio-6042, ¶ 31.

"'"[Factfinders] are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.'"'" *Tucker* at *id.*, quoting *State v. Mickens*, 10th Dist. Franklin No. 08AP-626, 2009-Ohio-1973, ¶ 18, quoting *State v. Coleman*, 10th Dist. Franklin No. 99AP-1387, 2000 Ohio App. LEXIS 5386 (Nov. 21, 2000).

{¶ 29} Curry, Brown's brother, witnessed at least part of the incident and testified to a similar scenario as Brown did. He was shown a photo array the day after the incident and identified Newman as the assailant with 50% certainty. At trial, he testified that he was confident Newman was the assailant, however.

{¶ 30} It has previously been held that, absent improper conduct prior to an in-court identification, a witness's "inability or unwillingness to identify a defendant in a pre-trial setting does not necessarily discredit an in-court identification." *State v. Ndiaye*, 10th Dist. Franklin No. 13AP-964, 2014-Ohio-3206, ¶ 9; *State v. Johnson*, 163 Ohio App.3d 132, 2005-Ohio-4243, 836 N.E.2d 1243, ¶ 57 (10th Dist.). In *Johnson*, the Tenth Appellate District found the "inability or unwillingness to make an identification based on the black-and-white photo arrays did not discredit [the witness's] in-court identification of defendant at the bindover hearing" where "[s]uggestive, out-of-court procedures, which could have possibly invalidated the in-court identification, [were] absent." *Id.* at ¶ 56-57. The court noted that the witness "made her identification under oath, in court, and presumably was subject to cross-examination," which the court found could be "used 'to test [an] identification before it harden[s].'" *Id.* at ¶ 56, quoting *Moore v.*

*Illinois*, 434 U.S. 220, 230, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977), fn. 5. Thus, Curry's identification need not have been automatically discredited; the trial court was able to assign the appropriate weight to it.

{¶ 31} Moreover, Taylor, the victim Newman ran over and beat, identified Newman as his assailant. And several police officers identified Brown's car and the gun that was used during Newman's crime spree.

{¶ 32} We are not persuaded by Newman's contention that he is entitled to a new trial because certain witnesses (i.e., Benjamin and Bascom) gave conflicting accounts of the crimes. Specifically, Benjamin and Bascom recanted their original statements given to the police; the original statements described Newman performing various crimes. The record demonstrates that the recantations were at the behest of Newman, however. The state produced jail calls between Newman and Benjamin. In those calls, Benjamin told Newman that he would recant his previous statement to the police so that Newman would not have to go to jail because of him.

{¶ 33} As mentioned, at trial Benjamin was not a cooperative witness for the state; he denied all aspects of his previous statement that implicated Newman. Benjamin continued his denial of his previous statement even after the state presented body camera footage on which Benjamin informed the police that Newman was responsible for the home invasion and shooting. Further, the detective whose body camera captured the interaction witnessed Newman and Benjamin interacting while the body camera footage was being played and

proffered the following on the record: "It was during the audio video of myself and Mr. Benjamin, at about 9:45 they were watching each other, the defendant, Mr. Newman, smiled at Mr. Benjamin, gave the thumbs up, winked his eye, and then he — Mr. Benjamin smiled back."

{¶ 34} Based on the above, the inconsistencies in Benjamin's testimony did not give rise to Newman's claims that his convictions were against the manifest weight of the evidence.

{¶ 35} We likewise find that any inconsistencies in Bascom's testimony do not give rise to Newman's claim that his convictions were against the manifest weight of the evidence. Similar to Benjamin, Newman "got to" Bascom and tried to influence her testimony so that she would not tell the court about the previous statement she gave with details about Newman committing the relevant crimes. Thus, at trial, Bascom initially testified that she "did not remember" in response to the state's questions. After she was declared a hostile witness, Bascom read the report that she made before Newman asked her to recant it — the report described Newman's criminal activities.

{¶ 36} In light of the above, as with Benjamin's testimony, the inconsistencies with Bascom's testimony were brought on by Newman trying to get them to recant their previous statements. When they finally told the truth, Benjamin's and Bascom's testimonies support the convictions.

{¶ 37} After reviewing this record, this case is not an exceptional case where the evidence weighs heavily in favor of Newman. The second assignment of error is overruled.

{¶ 38} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

LARRY A. JONES, SR., JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
RAYMOND C. HEADEN, J., CONCUR