[Cite as *State v. Sims*, 2022-Ohio-3365.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                     CASE NO. 13-21-14

      v.

NOEL G. SIMS, II,                           O P I N I O N

      DEFENDANT-APPELLANT.

---

**Appeal from Seneca County Common Pleas Court**
**Trial Court No. 19 CR 0118**

**Judgment Affirmed in Part, Reversed in Part and Cause Remanded**

**Date of Decision: September 26, 2022**

---

APPEARANCES:

      *Brian A. Smith* **for Appellant**

      *Derek W. DeVine* **for Appellee**

Case No. 13-21-14

**ZIMMERMAN, P.J.**

{¶1} Defendant-appellant, Noel G. Sims, II, ("Sims"), appeals the May 25, 2021 judgment of the Seneca County Court of Common Pleas retaining jurisdiction over him and committing him to Twin Valley Behavioral Healthcare-Moritz. For the reasons that follow, we affirm in part and reverse in part.

{¶2} On June 19, 2019, the Seneca County Grand Jury indicted Sims on Count One of aggravated burglary in violation of R.C. 2911.11(A)(1), (B), a first-degree felony, Count Two of kidnapping in violation of R.C. 2905.01(A)(4), (C)(1), a first-degree felony, and Count Three of attempted rape in violation of R.C. 2907.02(A)(2), (B), 2923.02(A), (E)(1), a second-degree felony.

{¶3} In response to Sims's June 21, 2019 motion contesting his competency to stand trial under R.C. 2945.37, the trial court ordered a competency evaluation of Sims in accordance with R.C. 2945.371(G)(3) and (4) on June 28, 2019.[1] "Under R.C. 2945.38(B)(1) and (C)(1), a common pleas court presiding over a criminal case involving a defendant charged with a violent first- or second-degree felony who has been found incompetent to stand trial pursuant to R.C. 2945.37 may require the defendant to undergo treatment for up to one year." *State v. Williams*, 126 Ohio St.3d 65, 2010-Ohio-2453, ¶ 11.

---

[1] R.C. 2945.371 was amended in August 2021; however, the trial court proceeded under the version of the statute in effect at the time that Sims committed the offenses at issue in this case. *See* R.C. 2945.371(G)(3), (4) (2016) (current version at R.C. 2945.371(H)(3), (4) (2021)). Accordingly, this court will address the version of the statute in effect at the time Sims committed the offenses at issue in this case.

**{¶4}** After a hearing on September 5, 2019, the trial court concluded that Sims was not competent to stand trial but that there was a substantial probability that his competence to stand trial could be restored within the one-year period. *See Williams* at ¶ 11 ("One situation in which the court is authorized to order treatment is when it finds that there is a "substantial probability" that the incompetent defendant will become competent to stand trial within one year while undergoing treatment."), citing R.C. 2945.38(B)(1)(a). That same day, the trial court appointed a new attorney to represent Sims at Sims's request.

**{¶5}** Following a hearing on December 18, 2019, the trial court concluded that Sims was competent to stand trial but ordered that his mental condition at the time of the offenses charged be evaluated under R.C. 2945.371(G)(4). *See* R.C. 2945.371(G)(4) (2016) (current version at R.C. 2945.371(H)(4) (2021)). Notwithstanding the trial court's order for Sims to be evaluated under R.C. 2945.371(G)(4), the examiner evaluated Sims under R.C. 2945.371(G)(3) after developing "concern[s] regarding [Sim's] mental state, appreciation for the alleged offenses, and [his] capacity to understand the nature and objective of the proceedings against him and of assisting in his defense." (Doc. No. 37). Consequently, the trial court again concluded on February 3, 2020 that Sims was not competent to stand trial but that there was a substantial probability that his competence to stand trial could be restored within the one-year period.

**{¶6}** After a hearing on May 22, 2020, the trial court concluded that Sims was competent to stand trial and that Sims knew the wrongfulness of his actions at the time of the offenses charged. At the same hearing, the trial court entered pleas of not guilty to the counts of the indictment on behalf of Sims and Sims informed the trial court that he "no longer wishes representation by counsel in this matter." (Doc. No. 43). Thereafter, Sims executed a written waiver of counsel on May 28, 2020. On June 10, 2020, the trial court appointed standby counsel to assist Sims in the proceedings if necessary.

**{¶7}** On October 2, 2020, over Sims's objection, the trial court granted the State's R.C. 2945.37(B) request that Sims undergo a competency evaluation under R.C. 2945.371(G)(3). After a hearing on February 2, 2021, the trial court concluded that Sims was not competent to stand trial because he was not "currently capable of assisting counsel in preparing a legal defense." (Doc. No. 152).

**{¶8}** On April 26, 2021, because the time-limit for treatment was approaching, the State filed a motion requesting that the trial court retain jurisdiction over Sims and commit him for mental-health treatment under R.C. 2945.39(A)(2). *See Williams*, 126 Ohio St.3d 65, 2020-Ohio-2453, at ¶ 12 (explaining that, "[i]f the one-year time for treatment expires and the defendant remains incompetent to stand trial, * * * R.C. 2945.39(A) provides two options that can be pursued": (1) "the court or prosecuting attorney may seek the defendant's civil commitment in probate

court under R.C. Chapter 5122" or (2) "the court or prosecuting attorney may seek to have the common pleas court retain jurisdiction over the defendant").

**{¶9}** After a hearing on May 12, 2021, the trial court determined on May 24, 2021 that Sims was not competent to stand trial and that the maximum time permitted under R.C. 2945.38(C) for treatment to restore competency expired. (Doc. No. 163). Consequently, the trial court granted the State's motion after concluding that the State proved by clear and convincing evidence that Sims committed the offenses alleged in the indictment and that Sims is a mentally ill person subject to court order.[2] As a result, the trial court retained jurisdiction over Sims and committed him to Twin Valley Behavioral Healthcare-Moritz under R.C. 2945.40(F) until a maximum date of May 12, 2051. *See* R.C. 2945.401(J)(1); R.C. 2929.14(A)(1), (2). Importantly, the trial court concluded in its journal entry that Sims "confirmed to the Court that he was still representing himself in this matter." (Doc. No. 163).

**{¶10}** On October 14, 2021, Sims filed his notice of appeal. He raises three assignment of error for our review. For ease of our discussion, we will be begin by addressing Sims's third assignment of error, followed by his second assignment of error, then his first assignment of error.

---

[2] The trial court filed its judgment entry of commitment on May 25, 2021. (Doc. No. 163).

## Assignment of Error No. III

**Because the evidence did not support the trial court's findings the trial court abused its discretion in finding Appellant incompetent to stand trial, in violation of Appellant's right to Due Process under the Fifth, Sixth, and Fourteenth Amendments to the Untied States Constitution and Article I, Section 16 of the Ohio Constitution.**

{¶11} In his third assignment of error, Sims argues that the trial court abused its discretion by determining that he was not competent to stand trial. Specifically, Sims contends that the record reflects that he has the capacity to understand the nature and object of the proceedings against him and that he is capable of assisting in preparing his defense.

### *Standard of Review*

{¶12} "'A trial court's decision on competency will not be disturbed absent an abuse of discretion.'" *State v. Adkins*, 3d Dist. Allen No. 1-19-71, 2020-Ohio-6799, ¶ 10, quoting *State v. Lechner*, 4th Dist. Highland No. 19CA3, 2019-Ohio-4071, ¶ 24. "An abuse of discretion is more than a mere error in judgment; it suggests that a decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

{¶13} "'A criminal defendant's competency to stand trial * * * is a question of fact.'" *State v. Stutzman*, 9th Dist. Wayne No. 18AP0038, 2019-Ohio-1695, ¶ 13, quoting *State v. Roberts*, 137 Ohio St.3d 230, 2013-Ohio-4580, ¶ 92. "Deference, therefore, generally ought to be afforded to a trial court's competency

determination, as 'factual determinations are best left to those who see and hear what goes on in the courtroom.'" *Id.*, quoting *State v. Cowans*, 87 Ohio St.3d 68, 84 (1999), and citing *State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, ¶ 59 ("As with other witnesses, the trial judge heard all of the expert testimony, and it was his job to judge their credibility and weigh all the evidence in making his findings."). "Therefore, an appellate court will not overrule the trial court's competency determination if the record contains credible, reliable evidence in support of the trial court's determination that the defendant understood the nature and objective of the proceedings against him." *State v. Heatherington*, 5th Dist. Richland No. 2021 CA 0021, 2022-Ohio-1375, ¶ 33, citing *State v. Williams*, 23 Ohio St.3d 16, 19 (1986). *See also Stutzman* at ¶ 13 ("A trial court's competency findings 'will not be disturbed when there is some reliable and credible evidence supporting those findings.'"), quoting *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, ¶ 46.

*Analysis*

**{¶14}** "Due process requires a criminal defendant be competent to stand trial." *Adkins* at ¶ 11, citing *State v. Berry*, 72 Ohio St.3d 354, 359 (1995). "'It has long been accepted that a person who lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.'" *Id.*, quoting *Drope v.*

*Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896 (1975). Thus, convicting an accused while he or she is considered to be legally incompetent violates the accused's due-process rights. *Id.*

{¶15} "The United States Supreme Court established the test for competency and requires the trial court to determine if an accused 'has sufficient present ability to consult with his lawyer with a reasonable degree of *rational* understanding—and whether he has a *rational* as well as factual understanding of the proceedings against him.'" (Emphasis added.) *Id.* at ¶12, quoting *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788 (1960). *See also State v. Lawson*, 165 Ohio St.3d 445, 2021-Ohio-3566, ¶ 50 (recognizing the application in Ohio of the competency test announced in *Dusky*). Ohio codified this competency test under R.C. 2945.37, which provides, in its relevant part:

> A defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial and shall enter an order authorized by section 2945.38 of the Revised Code.

R.C. 2945.37(G).

{¶16} "Therefore, if a defendant is capable of understanding the nature and objective of the proceedings and assisting in the defense, then the defendant is competent to stand trial." *Heatherington*, 2022-Ohio-1375, at ¶ 37. "A defendant

with mental illness or intellectual deficiencies may still be competent to stand trial." *Lechner*, 2019-Ohio-4071, at ¶ 27. "'Incompetency must not be equated with mere mental or emotional instability or even with outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel.'" *Id.*, quoting *State v. Bock*, 28 Ohio St.3d 108, 110 (1986).

**{¶17}** Based on our review of the record, we conclude that the trial court did not abuse its discretion by concluding that Sims was not competent to stand trial. That is, there is credible and reliable evidence supporting the trial court's determination that there is a preponderance of evidence that Sims was not competent to stand trial and that he could not be restored to competency in the statutory time allotted for restoration. *See State v. Hoffer*, 2d Dist. Montgomery No. 17241, 1999 WL 335136, *4 (May 28, 1999) (stating "'a psychiatrist's written report and corroborative testimony'" can be sufficient evidence to support a trial court's competency determination), quoting *State v. Stauter*, 2d Dist. Greene No. 97 CA 72, 1998 WL 399907, *4 (July 17, 1998). Specifically, at the May 12, 2021 hearing Dr. Aracelis Rivera ("Dr. Rivera"), a clinical and forensic psychologist with Twin Valley Behavioral Healthcare-Moritz, testified that Sims was not competent to stand trial. (May 12, 2021 Tr. at 15-16). Further, Dr. Rivera identified State's Exhibit One as the report she prepared on April 21, 2021 assessing Sims's competency to

stand trial and State's Exhibit Two as an April 26, 2021 addendum to her report dictated by David Forman ("Forman"), the forensic services director with Twin Valley Behavioral Healthcare-Moritz, which were admitted into evidence over Sims's objections.

{¶18} State's Exhibit One reflects Dr. Rivera's opinion that "Sims demonstrated a reasonably thorough factual understanding but not a rational understanding of the legal proceedings"—that is, "Sims did not provide a rational account of the acts charged"; "[i]nstead, his version was infused with paranoid delusional material." (State's Ex. 1). *Compare State v. Halder*, 8th Dist. Cuyahoga No. 87974, 2007-Ohio-5940, ¶ 118 (Boyle, M.J., J., dissenting) ("Rationally assisting with one's own defense presumes that one is able to make significant legal decisions about one's defense-with the advice counsel."). *See also United States v. Nagy*, S.D.N.Y. No. 96 CR. 601(RWS), 1998 WL 341940, *7 (June 26, 1998) ("Although Nagy understands factually the roles of the lawyers and the judge, as well as the difference between a complaint and an indictment, this is insufficient to support a finding of competency. He must also be able to assist properly in his defense.").

{¶19} Specifically, according to Dr. Rivera, Sims "believed he was being framed for the alleged charges, as a means of diverting attention from his mother, who reportedly kidnapped him during childhood." (State's Ex. 1). *See Nagy* at *7

("Nagy's desire to proceed to trial so that the conspiracy against him may be exposed is an example of his irrational thought process."). Furthermore, Dr. Rivera disclosed that "Sims evidenced paranoid delusions and delusions of grandeur during th[e] examination," which would cause "his attorney and the court [to] have * * * difficulty understanding him." (State's Ex. 1). Importantly, Dr. Rivera resolved that, "[b]ecause of his refractory psychiatric symptoms, Mr. Sims will be unable to testify with relevance if such testimony is deemed necessary" since he is "unable to provide reality-based answers to questions because those answers are likely to be disorganized." (*Id.*).

{¶20} In sum, Dr. Rivera concluded, "because of [Sims's] refractory psychotic symptoms, he lacks a rational understanding about the nature and objective of legal proceedings and lacks the capacity to assist his attorney." (*Id.*). *Accord Halder* at ¶ 121 (Boyle, M.J., J., dissenting) ("Halder may have understood the nature and objectives of the proceedings against him, but in no way could he understand it rationally, nor could he rationally assist with his defense."). Further, in State's Exhibit Two, Forman updated Dr. Rivera's opinion that "Sims cannot be restored to competency to stand trial in the time allotted by law" since Sims's "statutory time for restoration will be expiring on May 15, 2021." (State's Ex. 2).

{¶21} Moreover, since the trial court was in the best position to determine the credibility of expert witnesses, the weight given to the evidence and the

credibility of the witnesses is to be assessed by the trier of fact. *Lechner*, 2019-Ohio-4071, at ¶ 32. *See also Stutzman*, 2019-Ohio-1695, at ¶ 16 ("As a reviewing court, 'we are in no position to second-guess factual determinations made by a trial judge, which may be based on a person's demeanor, conduct, gestures, tone of voice, or facial expressions.'"), quoting *Cowans*, 87 Ohio St.3d at 84. In that role, evidently the trial court chose to believe the evidence reflecting that Sims has neither a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding nor a rational or factual understanding of the proceedings against him.

**{¶22}** Therefore, based on our review of the record, there is reliable and credible evidence supporting the trial court's competency determination. Consequently, the trial court did not act arbitrarily, unreasonably, or unconscionably by concluding that Sims was not competent to stand trial and that the maximum time permitted under R.C. 2945.38(C) for treatment to restore competency expired.

**{¶23}** Therefore, Sims's third assignment of error is overruled.

### Assignment of Error No. II

**Because the trial court conducted a hearing to determine Appellant's competency to stand trial, pursuant to R.C. 2945.37(D), and Appellant was not represented by counsel at the hearing, the trial court erred in finding Appellant incompetent to stand trial, in violation of Appellant's right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution, and in Violation of Appellant's right to Due Process under the**

**Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution.**

{¶24} In his second assignment of error, Sims argues that the trial court erred by permitting him to waive his right to counsel and exercise his right to self-representation. Specifically, Sims contends that the trial court should have rejected his request to represent himself because he lacked the competency required to engage in self-representation.

*Standard of Review*

{¶25} "We review de novo whether a defendant knowingly, voluntarily, and intelligently waived his right to counsel." *State v. Godley*, 3d Dist. Hancock No. 5-17-29, 2018-Ohio-4253, ¶ 9. "De novo review is independent, without deference to the lower court's decision." *State v. Hudson*, 3d Dist. Marion No. 9-12-38, 2013-Ohio-647, ¶ 27.

*Analysis*

{¶26} "The right to counsel for the criminally accused is enshrined in both the Sixth Amendment to the United States Constitution and the Ohio Constitution." *State v. Newman*, 8th Dist. Cuyahoga No. 109182, 2020-Ohio-5087, ¶ 17, citing Sixth Amendment to the United States Constitution and Article I, Section 10, Ohio Constitution. "Nevertheless, a defendant may waive his or her right to counsel and proceed pro se so long as that waiver is made voluntarily, knowingly, and intelligently." *Id.*, citing *State v. Nelson*, 1st Dist. Hamilton No. C-150480, 2016-

Ohio-8064, ¶ 18. "For such a waiver to be valid though, the record must demonstrate that the trial court made a sufficient inquiry to determine that the defendant 'fully understood and intelligently relinquished his or her right to counsel.'" *Id.*, quoting *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, ¶ 39. "Crim.R. 44(C) further provides that '[w]aiver of counsel shall be in open court and the advice and waiver shall be recorded [and,] in serious offense cases the waiver shall be in writing.'" *Id.* at ¶ 17, quoting Crim.R. 44(C). *See also Godley* at ¶ 12.

{¶27} This court has observed that there is no prescribed "'"formula or script to be read to a defendant who states that he elects to proceed without counsel."'" *Godley* at ¶ 11, quoting *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, ¶ 101, quoting *Iowa v. Tovar*, 541 U.S. 77, 88, 124 S.Ct. 1379 (2004). Rather, "'"[t]he information a defendant must possess in order to make an intelligent election * * * will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding.'" *Id.*, quoting *Johnson* at ¶ 101, quoting *Tovar* at 88. "Stated differently, 'the sufficiency of the trial court's inquiry will depend on the totality of the circumstances * * * .'" *Id.*, quoting *State v. Edmonds*, 12th Dist. Warren No. CA2014-03-045, 2015-Ohio-2733, ¶ 26.

{¶28} "Although a defendant's waiver of his right to counsel and decision to invoke his right of self-representation are afforded tremendous respect and

deference, the right of self-representation is not absolute, and it is subject to some limitation on its invocation and exercise." *Id.* at ¶ 13. *See also United States v. Veltman*, 9 F.3d 718, 721 (8th Cir.1993) ("The right to counsel varies depending on the context in which it is invoked, as do the requisites for waiver."). "First, '"[t]he assertion of the right to self-representation must be clear and unequivocal."'" *Godley* at ¶ 13, quoting *State v. Kramer*, 3d Dist. Defiance No. 4-15-14, 2016-Ohio-2984, ¶ 6, quoting *Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, at ¶ 72. "Second, '"[t]he defendant must also assert the right [to self-representation] in a timely fashion."'" *Id.* at ¶ 14, quoting *Kramer* at ¶ 7, quoting *State v. Steele*, 155 Ohio App.3d 659, 2003-Ohio-7103, ¶ 14 (1st Dist.). "Finally, trial courts may constitutionally deny a defendant his right to self-representation when there are lingering doubts concerning the defendant's competency to represent himself." *Id.* at ¶ 15.

{¶29} "The United States Supreme Court has stated that 'the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial * * * but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Id.*, quoting *Edwards*, 554 U.S. at 178. *See also Newman*, 2020-Ohio-5087, at ¶ 19 ("Trial courts have discretion, however, to inquire beyond a defendant's competency to stand trial in determining whether he or she is competent to proceed pro se."), citing

*Edwards* at 178. However, "even when a trial court doubts that a defendant is competent to represent himself because of a severe mental illness, the Supreme Court's decision in *Edwards* does not require the trial court to deny the defendant his constitutional right to self-representation." *Godley* at ¶ 15, citing *State v. McQueen*, 10th Dist. Franklin No. 09AP-195, 2009-Ohio-6272, ¶ 19, *State v. Griffin*, 10th Dist. Franklin No. 10AP-902, 2011-Ohio-4250, ¶ 20-21, and *United States v. Bernard*, 708 F.3d 583, 590 (4th Cir.2013).

{¶30} "Rather, a trial court may constitutionally permit an arguably incompetent defendant to represent himself so long as the trial court is otherwise satisfied that the defendant knowingly, voluntarily, and intelligently waived counsel and elected self-representation." *Id.*, citing *Godinez v. Moran*, 509 U.S. 389, 399-402, 113 S.Ct. 2680 (1993). *See also Veltman* at 720 ("This standard is case-specific 'because the "ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged."'"), quoting *Meyer v. Sargent*, 854 F.2d 1110, 1114 (8th Cir.1988), quoting *Strickland v. Washington*, 466 U.S. 668, 696, 104 S.Ct. 2052 (1984). Importantly, "'[t]he competency that is required of a defendant seeking to waive his [or her] right to counsel is the competence to waive the right, not the competence to represent himself [or herself].'" *Newman* at ¶ 18, quoting *Godinez* at 399, and citing *State v. Watson*, 132 Ohio App.3d 57, 63 (8th Dist.1998). To illustrate,

> [t]he United States Supreme Court has explained the distinction between a competency determination and an inquiry into the knowing and voluntary character of a rights waiver as follows:
>
> "The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the *ability* to understand the proceedings. * * * The purpose of the 'knowing and voluntary' inquiry, by contrast, is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced."

(Emphasis sic.) *Lawson*, 165 Ohio St.3d 445, 2021-Ohio-3566, at ¶ 73, quoting *Godinez* at 401, fn. 12, quoting *Parke v. Raley*, 506 U.S. 20, 28, 113 S.Ct. 517 (1992).

{¶31} In this case, nearly one year before the trial court's hearing during which it determined to retain jurisdiction over Sims and commit him to the care of a treatment facility, Sims unequivocally declared to the trial court that he wished to represent himself. In particular, on May 22, 2020, during a period when Sims was competent to stand trial, Sims asked to represent himself. Thereafter, Sims executed a written waiver of counsel on May 28, 2020 reflecting that his waiver of counsel was knowing, intelligent, and voluntary. However, subsequent to Sims's knowing, intelligent, and voluntary waiver of counsel, the trial court concluded on February 2 and May 24, 2021 (after the May 12, 2021 hearing during which Sims reasserted that he wished to represent himself) that Sims was not competent to stand trial.

{¶32} Here, Sims contends that the trial court erred by permitting him to represent himself during the May 12, 2021 hearing because he lacked the

competency required to engage in self-representation—that is, Sims argues that the trial court erred by concluding that he had the competency to waive his Sixth Amendment right to counsel after concluding that he did not have the capacity to stand trial. At first glance, it seems axiomatic that a defendant deemed incompetent for purposes of trial would also be incompetent for purposes of waiving his or her Sixth Amendment right to counsel. *See, e.g.*, *State v. Thomas*, 1st Dist. Hamilton No. C-170400, 2019-Ohio-132, ¶ 13 (acknowledging that the same standard applies to assessing a defendant's competency to stand trial as it does to assessing a defendant's request to waive his or her Sixth Amendment right to counsel).

{**¶33**} Nonetheless, based on our discussion in Sims's first assignment of error, we need not reach that issue in this case. "Unlike in cases of criminal incarceration, the constitutional right to counsel in civil commitment proceedings originates solely from the due process clause." *State v. Jackson*, 1st Dist. Hamilton No. C-130240, 2014-Ohio-613, ¶ 10, citing *In re Fisher*, 39 Ohio St.2d 71, 82 (1974). *See In re Moser*, 124 Ohio App.3d 117, 122 (2d Dist.1997) ("A person's right to counsel at a civil commitment proceeding is afforded not only by statute, but also by constitutional guarantees of due process of law."). *See also United States v. O'Laughlin*, 934 F.3d 840, 841 (8th Cir.2019) (holding that "a civil commitment proceeding * * * is not a criminal prosecution for purposes of the Sixth Amendment"); *Veltman* at 721 (noting that due process protections apply to civil-

commitment hearings), citing *Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254 (1980). "The Ohio Supreme Court has made clear that involuntary-commitment proceedings are civil in nature." *Jackson* at ¶ 9, citing *Williams*, 126 Ohio St.3d 65, 2010-Ohio-2453, at ¶ 37 and *State v. Tuomala*, 104 Ohio St.3d 93, 2004-Ohio-6239, ¶ 16. "While we recognize the significant interests at stake where a person is involuntarily subjected to restraints on his physical liberty, we have been told that civilly-committed persons 'need not be afforded the constitutional rights afforded to a defendant in a criminal prosecution.'" *Jackson* at ¶ 10, quoting *Williams*, 126 Ohio St.3d 65, 2010-Ohio-2453, at ¶ 37. *See Addington v. Texas*, 441 U.S. 418, 428, 99 S.Ct. 1804 (1979) (noting that "a civil commitment proceeding can in no sense be equated to a criminal prosecution").

**{¶34}** Consequently, by logical extension, a person subject to commitment proceedings under R.C. 2945.39 may waive assistance of counsel. However, "'such waiver is valid only where a comprehensive examination is made to determine that the person has sufficient knowledge of the particular facts and circumstances of his individual case and that he possesses sufficient competence to understandingly and wisely make the waiver decision.'" *In re Moser* at 122-123, quoting *McDuffie v. Berzzarins*, 43 Ohio St.2d 23 (1975), syllabus. *See also Fisher* at 77-78 ("'Fourteenth Amendment due process requires that the infirm person, or one acting in his behalf, be fully advised of his rights and accorded each of them unless

knowingly and understandingly waived.'"), quoting *Heryford v. Parker*, 396 F.2d 393, 396 (10th Cir.1968).

**{¶35}** Based the specific facts and circumstances of this case, we conclude that Sims validly waived his right to counsel at the involuntary-commitment proceeding conducted under R.C. 2945.39. *See Veltman* at 721 ("The record demonstrates that Veltman made a valid waiver of his right to counsel in this civil commitment proceeding."). In addition to Sims's prior knowing, intelligent, and voluntary (written) waiver of counsel, Sims knowingly and understandingly waived his right to counsel at the May 12, 2021 hearing. Indeed, the trial court documented that Sims "confirmed to the Court that he was still representing himself in this matter." (Doc. No. 163). Nevertheless, standby counsel was available at the hearing to assist Sims. *Compare id.* (noting that "Veltman waived counsel voluntarily and without coercion" since he "knew of the availability of appointed counsel" but averred to the court that he desired to represent himself).

**{¶36}** Furthermore, the record reflects that Sims had sufficient knowledge of the particular facts and circumstances of his individual case and that he possessed sufficient competence to understandingly and wisely make the waiver decision. Even though the trial court concluded that Sims was incompetent to stand trial, the record reflects that the trial court's competency determination largely hinged on Sims's irrational accounting of the underlying matter. Importantly, State's Exhibit

One reflects that Sims "demonstrated a reasonably thorough factual understanding * * * of the legal proceedings." (State's Ex. 1). In particular, "Sims named his charges, the potential penalty associated with each charge listed in the indictment and what each charge entailed"; "named key courtroom participants for a trial"; and was familiar with basic courtroom procedures, including the "pleas available to a defendant" and "the court process that follows a guilty plea." (*Id.*).

{¶37} Therefore, after carefully reviewing the record before us, we conclude that the totality of the circumstances reflects that Sims possessed sufficient competence to understandingly and wisely waive representation by counsel and engage in self-representation. *Accord Veltman* at 722 (concluding that the totality of the circumstances in the case reflected that "Veltman possessed sufficient mental capacity to waive his * * * right to counsel").

{¶38} For these reasons, Sims's second assignment of error is overruled.

**Assignment of Error No. I**

**Because the trial court erred in finding that Appellant committed the offenses with which he was charged, and that Appellant was a mentally ill person subject to court order, the court erred in retaining jurisdiction over Appellant pursuant to R.C. 2945.39(A)(2), in violation of Appellant's right to Due Process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution.**

{¶39} In his first assignment of error, Sims argues that the trial court erred by retaining jurisdiction over him and committing him to Twin Valley Behavioral

Healthcare-Moritz. In particular, Sims argues that the State failed to present clear and convincing evidence that he committed the offenses charged in the indictment as required by R.C. 2945.39(A)(2)(a) or that he is a mentally-ill person subject to a court order for purposes of 2945.39(A)(2)(b). Sims also contends that the trial court erred by imposing consecutive terms of involuntary commitment in violation of R.C. 2945.401(J)(1) and Ohio law.

*Standard of Review*

**{¶40}** "'In certain instances, R.C. 2945.39 authorizes a trial court to retain jurisdiction over an incompetent defendant and commit him to the care of a treatment facility.'" *State v. McCain*, 9th Dist. Medina No. 18CA0108-M, 2019-Ohio-4392, ¶ 8, quoting *State v. Weaver*, 9th Dist. Medina No. 17CA0092-M, 2018-Ohio-2998, ¶ 9. "A court may retain jurisdiction over a defendant if, following a hearing, it determines by clear and convincing evidence that: (1) the defendant committed the charged offense; and (2) the defendant is either 'a mentally ill person subject to court order or a person with an intellectual disability subject to institutionalization by court order.'" *Id.*, quoting R.C. 2945.39(A)(2)(a) and (b).

**{¶41}** "'Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.'" *Id.*, quoting *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954). "It is more than a mere preponderance of the evidence but

does not require proof beyond a reasonable doubt." *Cross* at paragraph three of the syllabus. "'Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof.'" *McCain* at ¶ 8, quoting *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990).

*Analysis*

**{¶42}** When a trial court makes the appropriate "R.C. 2945.39(A)(2) findings, then R.C. 2945.39(D)(1) directs the court to commit the defendant to a hospital operated by the Department of Mental Health or to another appropriate facility." *Williams*, 126 Ohio St.3d 65, 2010-Ohio-2453, at ¶ 15. "The court must order that the defendant be placed in the least-restrictive commitment alternative available consistent with public safety and the defendant's welfare, 'giv[ing] preference to protecting public safety." *Id.*, quoting R.C. 2945.39(D)(1). "Once a court commits a defendant under R.C. 2945.39(D)(1), all further proceedings are governed by R.C. 2945.401 * * * and 2945.402 * * * ." *Id.* at ¶ 16, citing R.C. 2945.39(D)(3).

**{¶43}** However, "[i]f the court does not make both R.C. 2945.39(A)(2) findings, it must dismiss the indictment and discharge the defendant unless the court or the prosecuting attorney files for the defendant's civil commitment in probate court under R.C. Chapter 5122." *Id.* at ¶ 14, citing R.C. 2945.39(C). "But '[a]

dismissal of charges under [R.C. 2945.39(C)] is not a bar to further criminal proceedings based on the same conduct.'" *Id.*, quoting R.C. 2945.39(C).

**{¶44}** R.C. 2945.401(J) governs the termination of a commitment ordered under R.C. 2945.39.

> Under R.C. 2945.401(J)(1)(a) through (c), a commitment pursuant to R.C. 2945.39 terminates upon the earlier of (a) the trial court's determination that the defendant is no longer a mentally ill person subject to hospitalization by court order, (b) the expiration of the maximum prison term the defendant could have received if the defendant had been convicted of the most serious offense charged, or (c) the trial court's termination of the commitment under R.C. 2945.401(J)(2)(a)(ii), which requires findings that the defendant is competent to stand trial and is no longer a mentally ill person subject to hospitalization by court order.

*Id.* at ¶ 17. Importantly, "[i]f the trial court's jurisdiction is terminated pursuant to R.C. 2945.401(J)(1)(b) because the defendant's commitment ends upon the expiration of the maximum prison term the defendant could have received, the court or prosecuting attorney may seek the defendant's civil commitment in probate court under R.C. Chapter 5122." *Id.* at ¶ 18, citing R.C. 2945.401(A).

**{¶45}** Here, proceeding under R.C. 2945.39(A)(2), the trial court retained jurisdiction over Sims and committed him to the care of a treatment facility after determining that there is clear and convincing evidence that he is a mentally ill person subject to court order and that he committed the offenses charged in the indictment. Based on our review of the record, we conclude that there is sufficient evidence supporting the trial court's determination that there is clear and convincing

-24-

evidence that Sims is a mentally ill person subject to court order and that he committed the offenses of which he was charged.

**{¶46}** "The phrases 'mental illness' and 'mentally ill person subject to court order' are statutorily defined terms of art." *Weaver*, 2018-Ohio-2998, at ¶ 29, citing R.C. 5122.01(A), (B), and R.C. 2945.37(A)(7). "A 'mental illness' is 'a substantial disorder of thought, mood, perception, orientation, or memory that grossly impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life.'" *Id.*, quoting R.C. 5122.01(A). The statute defines the phrase "mentally ill person subject to court order" to include a mentally ill person who, due to his or her mental illness:

> (1) Represents a substantial risk of physical harm to self as manifested by evidence of threats of, or attempts at, suicide or serious self-inflicted bodily harm;
>
> (2) Represents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior, evidence of recent threats that place another in reasonable fear of violent behavior and serious physical harm, or other evidence of present dangerousness;
>
> (3) Represents a substantial and immediate risk of serious physical impairment or injury to self as manifested by evidence that the person is unable to provide for and is not providing for the person's basic physical needs because of the person's mental illness and that appropriate provision for those needs cannot be made immediately available in the community;
>
> (4) Would benefit from treatment for the person's mental illness and is in need of such treatment as manifested by evidence of behavior

that creates a grave and imminent risk to substantial rights of others or the person;

(5)(a) Would benefit from treatment as manifested by evidence of behavior that indicates all of the following:

(i) The person is unlikely to survive safely in the community without supervision, based on a clinical determination.

(ii) The person has a history of lack of compliance with treatment for mental illness and one of the following applies:

(I) At least twice within the thirty-six months prior to the filing of an affidavit seeking court-ordered treatment of the person under section 5122.111 of the Revised Code, the lack of compliance has been a significant factor in necessitating hospitalization in a hospital or receipt of services in a forensic or other mental health unit of a correctional facility, provided that the thirty-six-month period shall be extended by the length of any hospitalization or incarceration of the person that occurred within the thirty-six-month period.

(II) Within the forty-eight months prior to the filing of an affidavit seeking court-ordered treatment of the person under section 5122.111 of the Revised Code, the lack of compliance resulted in one or more acts of serious violent behavior toward self or others or threats of, or attempts at, serious physical harm to self or others, provided that the forty-eight-month period shall be extended by the length of any hospitalization or incarceration of the person that occurred within the forty-eight-month period.

(iii) The person, as a result of the person's mental illness, is unlikely to voluntarily participate in necessary treatment.

(iv) In view of the person's treatment history and current behavior, the person is in need of treatment in order to prevent a relapse or deterioration that would be likely to result in substantial risk of serious harm to the person or others.

Case No. 13-21-14

R.C. 5122.01(B).[3]

**{¶47}** It is within the trial court's discretion as to what evidence to review when making its determination under R.C. 2945.39(A)(2)(b). *Weaver* at ¶ 28. "By statute, it may consider 'all relevant evidence, including, but not limited to, any relevant psychiatric, psychological, or medical testimony or reports, the acts constituting the offense charged, and any history of the defendant that is relevant to the defendant's ability to conform to the law.'" *Id.*, quoting R.C. 2945.39(B). Importantly, when "assessing whether a defendant is a mentally ill person subject to court order," a trial court is "to consider the totality of the circumstances." *Id.* at ¶ 29, citing *Williams*, 126 Ohio St.3d 65, 2010-Ohio-2453, at ¶ 15 and *In re Burton*, 11 Ohio St.3d 147, 149-150 (1984) (outlining the factors for a trial court to consider when conducting its totality of the circumstances analysis).

**{¶48}** Here, the trial court concluded that the State presented clear and convincing evidence that Sims is a mentally ill person subject to court order. In State's Exhibit One, Dr. Rivera concluded that Sims suffers from a mental illness in the psychotic spectrum—namely, schizoaffective disorder. According to Dr. Rivera, Sims

> has a substantial disorder or [sic] <u>thought</u> (i.e., paranoid and grandiose delusions, <u>mood</u> (irritability), <u>perception</u> (i.e., Mr. Sims has a history of auditory hallucinations) that <u>grossly impair his judgment</u> (i.e., Mr. Sims has a history of non-compliance with medication leading to

---

[3] "An individual who meets only the criteria described in division (B)(5)(a) of [R.C. 5122.01(B)] is not subject to hospitalization." R.C. 5122.01(B)(5)(b).

-27-

> psychiatric decompensation), <u>behavior</u> (i.e., While in the community, he has failed to follow through with outpatient mental health treatment)[,] <u>capacity to recognize reality</u> (i.e., Mr. Sims lacks insight into his mental illness and need for ongoing medication and treatment to maintain his psychiatric stability and functioning.)

(Emphasis sic.)  (State's Ex. 1).  Significantly, Dr. Rivera emphasized that, "[d]espite being compliant with medications, Mr. Sims continues to experience refractory psychotic symptoms (i.e., flat affect, paranoia, irritability, thought disorganization and delusions)." (*Id*.).

{¶49} In addition, the record reflects that Sims has a history of criminal conduct, including criminal convictions for trafficking in drugs and juvenile-delinquency adjudications.  Further, the record reflects that Sims "has been hospitalized on at least five separate occasions" because of his mental illness. (State's Ex. 1).  Consequently, based on that evidence along with the evidence presented constituting the offenses charged, we conclude that there is sufficient evidence supporting the trial court's conclusion that there is clear and convincing evidence that Sims is a mentally ill person subject to court order.

{¶50} Furthermore, there is sufficient evidence in the record supporting the trial court's conclusion that there is clear and convincing evidence that Sims committed the offenses of which he was charged.  In this case, Sims was charged with attempted rape in violation of R.C. 2907.02(A)(2) and 2923.02(A); aggravated burglary in violation of R.C. 2911.11(A)(1); and kidnapping in violation of R.C.

2905.01(A)(4). R.C. 2907.02 sets forth the offense of rape and provides, in its pertinent part, that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.02(A)(2). R.C. 2923.02, Ohio's attempt-crime statute, provides, in its relevant part, "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." R.C. 2923.02(A).

{¶51} R.C. 2907.01(A) defines "sexual conduct," in relevant part, as "vaginal intercourse between a male and female." "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A).

{¶52} R.C. 2901.01(A)(1) defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." In addressing the force-or-threat-of-force language under the rape statute, "[t]he Supreme Court of Ohio has further clarified that '[a] defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be

used if the victim does not submit. A threat of force can be inferred from the circumstances surrounding sexual conduct[.]'" *State v. Henry*, 3d Dist. Seneca No. 13-08-10, 2009-Ohio-3535, ¶ 26, quoting *State v. Schaim*, 65 Ohio St.3d 51 (1992), paragraph one of the syllabus.

**{¶53}** R.C. 2911.11(A)(1) sets forth the offense of aggravated burglary and provides:

> (A) No person, by force, stealth, or deception, shall trespass in an occupied structure * * *, when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if any of the following apply:
>
> (1) The offender inflicts, or attempts or threatens to inflict physical harm on another.

The same definition of force that we discussed above applies to the crime of aggravated burglary. *See* R.C. 2901.01(A)(1). Trespass occurs when a person, without privilege to do so, knowingly enters on the premises of another. *State v. O'Neal*, 87 Ohio St.3d 402, 408 (2000); R.C. 2911.21(A)(1). "R.C. 2901.01(A)(12) defines 'privilege' as 'an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity.'" *State v. Worth*, 10th Dist. Franklin No. 10AP-1125, 2012-Ohio-666, ¶ 42, quoting R.C. 2901.01(A)(12). Finally, "physical harm to persons" is defined as "any injury * * * regardless of its gravity or duration." R.C. 2901.01(A)(3).

**{¶54}** The offense of kidnapping is codified under R.C. 2905.01, which provides, in its relevant part:

> (B)  No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
>
> * * *
>
> (4)  To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will.

R.C. 2905.01(A)(4).   Under R.C. 2905.01(A), "'the mens rea of the statute is purpose,'" which we defined above.  *State v. Montgomery*, 2d Dist. Montgomery No. 22193, 2009-Ohio-1415, ¶ 12, quoting *State v. Carver*, 2d Dist. Montgomery No. 21328, 2008-Ohio-4631, ¶ 145.

**{¶55}** "Kidnapping under R.C. 2905.01(A)(4) 'requires only that the restraint or removal occur for the purpose of nonconsensual sexual activity.'" *State v. Murphy*, 8th Dist. Cuyahoga No. 107836, 2019-Ohio-4347, ¶ 26, quoting *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 197, and citing *State v. Dove*, 8th Dist. Cuyahoga No. 101809, 2015-Ohio-2761, ¶ 37.

> "Ohio law is clear that '[a]n offense under R.C. 2905.01 does not depend on the manner in which an individual is restrained. * * * Rather, it depends on whether the restraint "is such as to place the victim in the offender's power and beyond immediate help, even though temporarily." * * * The restraint "need not be actual confinement, but may be merely compelling the victim to stay where he is."'"

*Id.*, quoting *State v. Wright*, 8th Dist. Cuyahoga No. 92344, 2009-Ohio-5229, ¶ 24, quoting *State v. Mosley*, 178 Ohio App.3d 631, 2008-Ohio-5483, ¶ 20 (8th Dist., quoting *State v. Wilson*, 10th Dist. Franklin No. 99AP-1259, 2000 WL 1639621, *5 (Nov. 2, 2000).

**{¶56}** At the May 12, 2021 hearing, Detective Shilo Frankart ("Detective Frankart") of the Fostoria Police Department, who investigated the case, testified that Sims was discovered by a nurse in the victim's room at the Good Shepherd Home, which is located "[i]n the Seneca County portion of Fostoria" on June 2, 2019 at approximately 6:30 a.m. (May 12, 2021 Tr. at 25). According to Detective Frankart, Sims was observed "naked" and "on top of [the victim] as she was laying on the bed clothed with a nightgown on"; however, her "[u]ndergarments had been removed." (*Id.* at 26).

**{¶57}** Detective Frankart testified that the victim told him that she "never had met" Sims, did not "know who he was," and "[d]id not invite him into the room." (*Id.* at 28). He testified that the victim described that Sims "attempted several times to turn her over onto her stomach and she was resisting that attempt." (*Id.* at 30). He further testified that the victim was assessed by medical professionals, who "found bruising to her body, redness to her vaginal area as well." (*Id.* at 29). (*See also id.* at 31-32). In particular, Detective Frankart identified that the victim sustained a bruise to her upper left arm.

{¶58} Detective Frankart testified that his investigation revealed that Sims gained access to the nursing facility "[t]hrough an unlocked exit/entrance that was alarmed." (*Id.* at 30). According to Detective Frankart, the door through which Sims gained access to the facility is "not labeled" as a public entrance to the nursing facility. (*Id.* at 31). However, even though a silent alarm sounded, Sims was not discovered until he was found in the victim's room. Rather, according to Detective Frankart, "one of the nurses * * * thought[] * * * that actually a resident had exited the door instead of entered. It was the time of morning that she felt someone may have walked out [so s]he walked out that exit/entrance door, checked outside, did not locate anything or anybody so then walked back in and continued her rounds." (*Id.* at 30-31).

{¶59} In sum, Detective Frankart testified that his investigation revealed that Sims restrained the victim's liberty by force to engage in sexual activity and that Sims attempted to engage in sexual conduct with the victim by force or threat of force.

{¶60} On appeal, Sims argues that there is insufficient evidence that he attempted to engage in sexual conduct with the victim by force or threat of force or that he restrained the victim, by force, to engage in that sexual activity. Moreover, Sims contends that there is insufficient evidence that he "used 'force, stealth or deception,'" to trespass in the Good Shepherd Home. (Appellant's Brief at 9).

-33-

**{¶61}** However, contrary to any argument raised by Sims, the State was not required to present clear and convincing evidence that Sims acted with the requisite mens rea. Indeed, "[a] trial court's determination by clear and convincing evidence under R.C. 2945.39(A)(2) that the defendant committed the offense does *not* require a finding of scienter and is merely a factor considered in determining the propriety of the commitment; it plays no role beyond that limited purpose." (Emphasis added.) *Williams*, 126 Ohio St.3d 65, 2010-Ohio-2453, at ¶ 33. "Instead, a trial court's finding under this evidentiary standard that the defendant has committed the offense charged is used only to determine the defendant's degree of dangerousness." *Id.* at ¶ 60.

**{¶62}** Therefore, applying the appropriate evidentiary lens, we conclude the trial court had sufficient evidence before it to satisfy the clear-and-convincing burden of proof based on the evidence presented. *Accord McCain*, 2019-Ohio-4392, at ¶13, citing *Schiebel*, 55 Ohio St.3d at 74. Specifically, Detective Frankart testified that Sims was discovered on top of the victim in her bed in the Good Shepherd Home in the early morning and that he had removed her undergarments. *See State v. Stevens*, 3d Dist. Allen No. 1-14-58, 2016-Ohio-446, ¶ 27. Likewise, there is evidence in the record that the victim was asleep when the offense began. *See id.* In addition, the record reflects that the victim is an elderly resident of the

-34-

Good Shepherd Home, while Sims is a younger man that the victim described as "very strong." (*Id.* at 35).

**{¶63}** Moreover, for an offender to commit rape, the statute does not require that a victim prove that he or she physically resisted the offender. R.C. 2907.02(C). Yet, that the victim physically resisted Sims as he tried to turn her to her stomach suggests that Sims compelled the victim to submit to the sexual conduct by means of physical force. *Accord Stevens* at ¶ 25, citing *State v. Henry*, 3d Dist. Seneca No. 13-08-10, 2009-Ohio-3535, ¶ 45, 60 (Shaw, J., dissenting) (concluding that the victim's resistance should "be used to infer any force or threat of force on the part of the defendant in trying to complete the sexual act" and that "[t]he degree of force necessary for [the victim] to use to get away from Henry is further indication of the degree of force being used by Henry to perpetrate the offense"). Similarly, Detective Frankart described the injuries that the victim suffered as a result of Sims's actions, which are indicative of restraint *and* that Sims attempted to engage in sexual activity with the victim. *See Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, at ¶ 198-200.

**{¶64}** Thus, based on the totality of the circumstances of this case, the trial court had sufficient evidence to conclude by clear and convincing evidence that Sims attempted to engage in sexual conduct with the victim by force or threat of force and that he restrained the victim, by force, to engage in that sexual activity.

*See Stevens* at ¶ 21 ("'[T]he amount of force [necessary to prove forcible rape under R.C. 2907.02(A)(2)] must be examined in light of the circumstances.'"), quoting *State v. Runyon*s, 3d Dist. Union No. 14-91-30, 1992 WL 136196, *2 (June 9, 1992). *See also State v. Matthieu*, 3d Dist. Mercer No. 10-02-04, 2003-Ohio-3430, ¶ 17 (noting that R.C. 2905.01 "'punishes certain removal or restraint done with a certain purpose and the eventual success or failure of the goal is irrelevant'"), quoting *State v. Moore*, 8th Dist. Cuyahoga No. 60334, 1992 WL 104220, *3 (May 14, 1992).

**{¶65}** Turning to Sims's aggravated-burglary charge, even though "'stealth' is not defined by the Ohio Revised Code," the term has been defined to mean "'any secret, sly or clandestine act to avoid discovery' when attempting to gain entry into a premises." *State v. Evans*, 9th Dist. Summit No. 28924, 2019-Ohio-603, ¶ 19, quoting *State v. Fleming*, 9th Dist. Lorain Nos. 15CA010792 and 15CA010793, 2017-Ohio-871, ¶ 9. Detective Frankart testified that Sims entered the Good Shepherd Home through a silent-alarmed entrance (which is not available to the public) and that his entrance went unnoticed until he was found in the victim's room. Furthermore, Detective Frankart testified that the victim did not invite Sims into her room.

**{¶66}** Based on this evidence, the trial court had sufficient evidence to conclude that Sims "acted in the required 'secret' fashion to avoid detection." *State v. Trikilis*, 9th Dist. Medina No. 04CA0096-M, 2005-Ohio-4266, ¶ 32. In other

words, the trial court had sufficient evidence to conclude by clear and convincing evidence that Sims trespassed by stealth in the Good Shepherd Home and, therefore, that Sims committed the offense of aggravated burglary.

**{¶67}** Finally, to the extent that the State is required to establish that Seneca County is the proper venue at a hearing pertaining to whether a trial court is permitted to retain jurisdiction over a defendant whose competence to stand trial has not been restored, we conclude that the State presented sufficient evidence of venue. That is, based on our review of the record, there is clear and convincing evidence that Sims committed the offenses of which he was charged in Seneca County, Ohio. *See, e.g.*, *State v. Patterson*, 3d Dist. Hancock No. 5-11-15, 2012-Ohio-2839, ¶ 73.

**{¶68}** Nevertheless, Sims attacks much of Detective Frankart's testimony as inadmissible hearsay. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is generally not admissible unless an exception applies. Evid.R. 802.

**{¶69}** Before proceeding, this court must pause to address the application of the Ohio Rules of Evidence in this matter. *See Weaver*, 2018-Ohio-2998, at ¶ 13. We conclude that although a hearing pertaining to whether a trial court is permitted to retain jurisdiction over a defendant whose competence to stand trial has not been restored must comport with the requirements of due process, it is not a criminal

-37-

proceeding. *See Williams*, 126 Ohio St.3d 65, 2010-Ohio-2453, at paragraph two of the syllabus ("Because R.C. 2945.39 is civil in nature, a person committed under the statute need not be afforded the constitutional rights afforded to a defendant in a criminal prosecution."). *See also State v. McKeithen*, 3d Dist. Marion No. 9-08-29, 2009-Ohio-84, ¶ 22, citing *State v. Ryan*, 3d Dist. Union No. 14-06-55, 2007-Ohio-4743, ¶ 8, citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756 (1973); Evid.R. 101(C)(3). *But see State v. Jones*, 9 Ohio St.3d 123 (1984). Instead, we associate such hearing with a miscellaneous criminal proceeding in which the Rules of Evidence do not apply. *See Weaver* at ¶ 13 (presenting the argument that "a proceeding under R.C. 2945.39 is more akin to a 'miscellaneous criminal proceeding' such as sentencing"); *State v. Kaimachiande*, 3d Dist. Logan No. 8-18-57, 2019-Ohio-1939, ¶ 20 (noting that "[i]t is well-settled that the Rules of Evidence do not apply" in a community-control-revocation hearing). "Thus hearsay or other evidence that may have been inadmissible during a criminal trial *can* be permissible" in a hearing pertaining to whether a trial court is permitted to retain jurisdiction over a defendant whose competence to stand trial has not been restored." (Emphasis added.) *Kaimachiande* at ¶ 20, citing *State v. Ohly*, 166 Ohio App.3d 808, 2006-Ohio-2353, ¶ 21 (6th Dist.).

{¶70} Generally, "[t]he decision to admit or exclude evidence lies in the sound discretion of the trial court." *Weaver* at ¶ 10. An abuse of discretion suggests

that a decision is unreasonable, arbitrary, or unconscionable. *Adams*, 62 Ohio St.2d at 157-158. However, because Sims did not object to Detective Frankart's testimony, he waived all but plain error on appeal. *Accord State v. Saffell*, 9th Dist. Wayne No. 15AP0041, 2016-Ohio-5283, ¶ 9, citing *State v. Stephens*, 6th Dist. Huron No. H-98-045, 1999 WL 339254, *4 (May 28, 1999). *See also State v. Boykins*, 3d Dist. Marion No. 9-14-28, 2015-Ohio-1341, ¶ 7 (applying plain-error review to a community-control-revocation hearing). "A court recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice." *State v. Smith*, 3d Dist. Hardin No. 6-1414, 2015-Ohio-2977, ¶ 63, citing *State v. Saleh*, 10th Dist. Franklin No. 07AP-431, 2009-Ohio-1542, ¶ 68. Accordingly, to be reversible, we must conclude that there was error—a deviation from a legal rule—and that the error was an obvious defect in the proceedings that affected the outcome of the proceedings. *See State v. Hare*, 2d Dist. Clark No. 2017-CA-4, 2018-Ohio-765, ¶ 41, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002) and Crim.R. 52(B).

**{¶71}** It was not plain error for the trial court to admit Detective Frankart's testimony at Sims's hearing. Importantly, R.C. 2945.39(B) "specifically gives a trial court the discretion to consider *all relevant evidence*" when determining whether to retain jurisdiction over a defendant. (Emphasis added.) *State v. Smith*, 11th Dist. Lake No. 2013-L-020, 2013-Ohio-5827, ¶ 19. Indeed, in situations

"'[w]hen hearsay testimony is admitted without objections, it may properly be considered and given its natural probative effect as if it were in law admissible, the only question being with regard to how much *weight* should be given thereto.'" (Emphasis added.) *State v. Bahns*, 185 Ohio App.3d 805, 2009-Ohio-5525, ¶ 19 (2d Dist.), quoting *State v. Petro*, 148 Ohio St. 473, 500 (1947). Furthermore, at a hearing pertaining to whether a trial court is permitted to retain jurisdiction over a defendant whose competence to stand trial has not been restored, "the trial court, being in the better position to observe the witnesses and hear their testimony, is entitled to deference on issues of witness credibility and weight of the evidence." *State v. Patierno*, 3d Dist. Defiance No. 4-08-08, 2009-Ohio-410, ¶ 23.

**{¶34}** Here, based on our review of the record, Sims had the opportunity to cross-examine Detective Frankart and Sims did not offer any evidence in his defense. *Accord Ryan*, 2007-Ohio-4743, at ¶ 14. Likewise, since the trial court was in the better position to assess witness credibility, it apparently chose to believe the testimony presented by Detective Frankart. *Accord Bahns* at ¶ 19. Consequently, the trial court's admission of Detective Frankart's testimony did not constitute a defect affecting Sims's substantial rights. *See id.*

**{¶35}** Finally, Sims argues that the trial court failed to merge the kidnapping and attempted-rape offenses of which the trial court concluded that he committed. Specifically, Sims contends that double-jeopardy protections—specifically the

merger of allied offenses of similar import—should apply to an involuntary commitment under R.C. 2945.39 since the State is required "to prove, by clear and convincing evidence that '[he] committed *the offense with which [he was] charged.*'" (Emphasis sic.) (Appellant's Brief at 12, quoting R.C. 2945.39(A)(2)(a)). However, "[b]ecause R.C. 2945.39 is civil in nature [and] a person committed under the statute need not be afforded the constitutional rights afforded to a defendant in a criminal prosecution," we hold that double-jeopardy protections—namely, the merger of allied offenses of similar import—do not apply to involuntary commitments under R.C. 2945.39. *Williams*, 126 Ohio St.3d 65, 2010-Ohio-2453, at paragraph two of the syllabus. *See also State v. Stewart*, 2d Dist. Miami No. 2016-CA-13, 2017-Ohio-2785, ¶ 24; *State v. Lowell*, 8th Dist. No. 109684, 2021-Ohio-3098, ¶ 38.

{¶36} Nevertheless, Sims contends that the trial court erred by committing him to Twin Valley Behavioral Healthcare-Moritz for a maximum of 30 years. We agree. Because a trial court can only commit a defendant for the length of the maximum prison term he or she could have received for the most serious offense charged, the applicable maximum term in this case is 11 years. *See State v. Coleman*, 6th Dist. Lucas No. L-15-1071, 2016-Ohio-1111, ¶ 15 ("The trial court is permitted to commit appellant for psychiatric treatment only for the maximum amount of time appellant would have received on the most serious offense.");

*Williams* at ¶ 17; R.C. 2945.401(J)(1)(b); 2929.14(A)(1)(a). *See also Lowell* at ¶ 41. Consequently, it was error for the trial court to commit Sims for a maximum term beyond 11 years. *Accord Coleman* at ¶ 15; *State v. Lantz*, 11th Dist. Portage No. 2018-P-0015, 2019-Ohio-3439, ¶ 21.

**{¶37}** In sum, based on our review of the record, we conclude that the trial court did not err by retaining jurisdiction of Sims and committing him to Twin Valley Behavioral Healthcare-Moritz. That is, clear and convincing evidence established that Sims committed the offenses of which he was charged and he is a mentally-ill person subject to a court order. However, we conclude that the trial court erred by committing Sims for a maximum term of 30 years.

**{¶38}** For these reasons, Sims's first assignment of error is sustained in part and overruled in part.

**{¶39}** Having found error prejudicial to the appellant herein in the particulars assigned and argued in the first assignment of error, in part, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion. Having found no error prejudicial to the appellant herein in the particulars assigned and argued in the second and third assignments of error, we affirm the judgment of the trial court.

> ***Judgment Affirmed in Part,***
> ***Reversed in Part and***
> ***Cause Remanded***

**MILLER and WILLAMOWSKI, J.J., concur in Judgment Only.**